■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR DRAYTON, Appellant.—Appeal by defendant (1) from a judgment of the Supreme Court, Kings County, rendered August 27, 1973, convicting him of assault in the third degree, upon his plea of guilty, and imposing sentence and (2) by permission, from an order of the same court, dated December 6, 1973, which denied his motion for resentence. Judgment and order affirmed. In 1972 defendant, then a few weeks shy of his seventeenth birthday, was indicted—as was a codefendant not involved in this appeal—by a Kings County Grand Jury and charged in a three-count indictment with the crimes (felonies) of attempted robbery in the second degree (two counts) and assault in the second degree. He entered a plea of "not guilty". Several months later, in Supreme Court, defendant was permitted to withdraw his not guilty plea and to plead guilty to the crime of assault in the third degree, a Class A misdemeanor, in full satisfaction of the indictment. The court declared him to be an eligible youth as defined in CPL 720.10 (subd 2), since he had not previously been convicted of a felony and the indictment did not accuse him of a Class A felony. However, the probation report was so derogatory in its content that the trial court refused to adjudicate defendant a youthful offender (Y.O.) and instead imposed a sentence of imprisonment of one year and remanded him to the New York City Department of Correction. The instant appeal is grounded upon the proposition that, since defendant was in the age range of "at least sixteen years old and less than nineteen years old" (CPL 720.10, subd 1) and entered a misdemeanor plea, he was entitled, as a matter of law, to be sentenced in accordance with the Y.O. provision (CPL 720.20). As pertinent from his point of view, that section reads: "1. Upon conviction of an eligible youth, the court must order a presentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender. Such determination shall be in accordance with the following criteria: (a) If in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record and by not imposing an indeterminate term of imprisonment of more than four years, the court may, in its discretion, find the eligible youth is a youthful offender; and (b) Where the conviction is had in a local criminal court and the eligible youth had not prior to commencement of trial * * * been convicted of a crime or found a youthful offender, the court must find

he is a youthful offender." Perhaps conveniently, defendant overlooks subdivision 4 of the same section: "4. Upon determining that an eligible youth is not a youthful offender, the court must order the accusatory instrument unsealed and continue the action to judgment pursuant to the ordinary rules governing criminal prosecutions." As a practical matter, if defendant had been processed under CPL 720.20 (subd 1, par [b]) in a nonjury trial, the maximum period of incarceration permitted would have been six months (see *Baldwin v New York,* 399 US 66). *Baldwin* established the rule that a jury trial is mandated if the sentence which may be imposed can exceed six months' incarceration. The Y. O. act first entered our statutes as sections 252-a to 252-h of the Code of Criminal Procedure (L. 1943, ch. 549, eff. Sept. 1, 1943). It was enacted with the praiseworthy aim that a youth between the ages of 16 and 19 should not be stigmatized for life with a criminal record because of a hasty, ill-advised or thoughtless act, which, although deplorable in itself, was not the act of a hardened criminal. The act has been amended from time to time. Now, except as otherwise regulated by statute (as in CPL 720.20, subd 1, par [b]), the court is vested with discretion in the application of the act, for Y. O. treatment is a privilege accorded to a youth, not a constitutional right *(People v Langford,* 206 Misc 628). Accordingly, the Legislature is empowered to surround the law with such limitations as it, in its wisdom, deems fit. Here, defendant was accused by a Grand Jury of committing the felonies above mentioned. Had a trial proceeded he may or may not have been convicted of one or more felonies. The fact that he was permitted to plead to a misdemeanor was, in effect, an act of grace on the part of the People and the trial court. As envisioned, Y. O. treatment is a natural and gradual intermediate step between the application of statutes regarding juvenile delinquency (up to 16 years of age) and adulthood. The theory is that the youth is to be allowed at least one bite before being subjected to the harsher processes of the law. In this instance, defendant's past, even at so tender an age, had been unsavory, as reflected in his probation report. Defendant complains of a denial to him of the equal protection of the law (N. Y. Const., art. I, § 11; U. S. Const., 14th Amdt., § 1), noting that it has been held that: "Equal protection does not require identity of treatment. It only requires that classifications rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary" *(Walters v City of St. Louis,* 347 US 231, 237). Defendant views his case through the wrong end of the telescope. Viewed in its proper light, he has been denied Y. O. treatment in the exercise of the trial court's discretion, and was then considered as an adult for the purpose of sentence. Let us suppose that his codefendant was an adult who pled guilty to the same crime, i.e., assault in the third degree. The adult would have been amenable to the one-year sentence. If defendant's reasoning is to be followed and if he, defendant, were to receive the benefit of the six-month sentence accorded to a Y. O., then why should not the adult receive equal treatment? The question answers itself. The youth, if accorded Y. O. treatment would benefit by grace of the Legislature, which lenity is not accorded the adult. Thus, it is the Y. O. who gains the advantage in derogation of the treatment accorded the adult. If anyone should be heard to complain, it is the latter. As with many laws humanitarian in nature, the Y. O. act has spawned many abuses and much misuse. Hoodlums and thugs, impossible to rehabilitate, have been the recipients of its benefits and have fallen afoul of the law for more serious crimes in later years after they were no longer afforded the

benefits of the act. Conversely, many youths arrested for such acts as unauthorized use of motor vehicles and criminal trespass, among others, can thank the act for bringing the error of their ways home to them on the occasion of their first misstep. The attention of the Legislature, however, should be called to one anomaly with respect to the act. Under existing law, 18 is the age of majority, yet the Y. O. act extends its benefits to a youth until the age of 19. Surely if one is old enough to enjoy all the privileges and immunities of citizenship, as well as bearing the duties thereof, such a person is old enough to be amenable to the adult criminal justice system. Latham, Acting P. J., Cohalan, Christ and Brennan, JJ., concur; Shapiro, J., concurs in the result with the following memorandum:

### THE ISSUE

This appeal attacks the provisions of CPL 720.20 (subd 1, par [a]) as an unconstitutional denial of the Equal Protection Clauses of the Fourteenth Amendment of the Constitution of the United States and of section 11 of article I of the Constitution of the State of New York. That provision of the CPL authorizes a Justice of the Supreme Court, *in his discretion,* to grant or deny youthful offender status to a person otherwise eligible for such treatment, whereas the provisions of CPL 720.20 (subd 1, par [b]) divest the court of any such discretion and *mandate* the grant of youthful offender treatment to an eligible defendant who is convicted in a local criminal court if he had not, prior thereto, been convicted of a crime or found to be a youthful offender.

### THE FACTS

The indictment charged appellant with commission of the felonies of robbery in the second degree (two counts) and assault in the second degree. He pled guilty to the crime of assault in the third degree, a Class A misdemeanor. The Justice of the Supreme Court, in accepting the plea, advised appellant that he could impose a one-year jail sentence, adding that since appellant was under the age of 19 years, he was eligible for youthful offender treatment and that whether he received such treatment from the court depended on whether the probation report was favorable to him and upon whether his attorneys requested such treatment. After receipt of the probation report, the trial court refused to adjudge appellant a youthful offender and instead imposed the sentence of imprisonment for one year here under appeal.

### APPLICABLE PROVISIONS OF THE STATUTE

The relevant provisions of CPL 720.20, which deals with youthful offender determinations, read: "1. Upon conviction of an eligible youth, the court must order a presentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender. Such determination shall be in accordance with the following criteria: (a) If in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record and by not imposing an indeterminate term of imprisonment of more than four years, *the court may,* in its discretion, find the eligible youth is a youthful offender; and (b) Where the conviction is had in a local criminal court and the eligible youth has not prior to commencement of trial * * * been convicted of a crime or found a youthful offender, *the court must* find he is a youthful offender. * * * 3. Upon determining that an eligible youth is a

youthful offender, the court must direct that the conviction be deemed vacated and replaced by a youthful offender finding; and the court must sentence the defendant pursuant to section 720.25. 4. Upon determining that an eligible youth is not a youthful offender, the court must order the accusatory instrument unsealed and continue the action to judgment pursuant to the ordinary rules governing criminal prosecutions." (Emphasis supplied.) CPL 720.25, the then applicable statute, formerly mentioned in CPL 720.20 (subd 3), barred indeterminate sentences and, in the instances of youthful offender findings made in local criminal courts, also barred definite sentences of imprisonment in excess of six months. The six-month limitation was adopted in 1971 in order to insure compliance by those local criminal courts in the State, like the Criminal Court of the City of New York, which then had no provision for jury trials, with the requirement of *Baldwin v New York* (399 US 66) that any criminal defendant charged with an offense which entails a possible jail sentence in excess of six months, is entitled to a jury trial. CPL 10.30 (subd 1, par [a]) and 10.20 (subd 1, pars [a], [b]) provide that local criminal courts may only try misdemeanors and petty offenses, while superior courts are given exclusive trial jurisdiction of felonies and concurrent trial jurisdiction of misdemeanors with local criminal courts. It is conceded that appellant is an eligible youth as that term is defined in CPL 720.10. It is also clear that, having been indicted for felonies, he could be tried only in a superior court.

### THE APPELLANT'S CONTENTIONS

The major thrust of appellant's attack on the constitutionality of section 720.20 is that, in resting the determination of whether the courts must afford him youthful offender treatment on the happenstance of whether the court in which he is scheduled for trial is a superior court or a local criminal court, it denies him equal protection of the law. To buttress this contention appellant notes that the crime to which he pleaded guilty is assault in the third degree, a misdemeanor which could be tried in a local criminal court. Appellant contends that a "statute which prescribes different degrees of punishment for the same acts committed under the same circumstances by persons in like situations denies equal protection of the laws in violation of the Constitution". A second contention made by appellant is that the constitutionality of CPL 720.20 (subd 1, par [a]) could be saved if this court should find that, when the sentencing court, the Supreme Court, a superior court, accepted appellant's plea of guilty to the misdemeanor and sentenced him, it was "sitting as a local criminal court" (see CPL 10.10, subd 3, par [f]) and that such court was therefore subject to the mandatory requirement of CPL 720.20 (subd 1, par [b]) that appellant be afforded youthful offender treatment.

### THE APPLICABLE LAW

I agree with appellant that " 'Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary. C. F. *Dominion Hotel, Inc. v Arizona,* 249 US 265; *Great Atlantic & Pacific Tea Co. v Grosjean,* 301 US 412; *New York Rapid Transit Corp. v City of New York,* 303 US 573; *Skinner v Oklahoma ex rel. Williamson,* 316 US 535.' *Walters v City of St. Louis,* 347 US 231, 237." Hence, it becomes necessary to determine whether the legislative grant of discretion to supe-

rior courts to decide whether an otherwise eligible youth convicted before them is to be given youthful offender treatment and its denial of such discretion to local criminal courts with respect to eligible youths convicted before them is a classification which rests "on real and not feigned differences", one which has "some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary." In so doing we must recognize that "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think" *(Williamson v Lee Optical Co.,* 348 US 483, 489). Again, as the Supreme Court of the United States pointed out in another case, "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it" *(McGowan v Maryland,* 366 US 420, 426). So, too, Justice Powell, speaking for the Court in *McGinnis v Royster* (410 US 263, 270) said: " '[T]he problems of government are practical ones and may justify, if they do not require, rough accommodations— illogical, it may be, and unscientific.' *Metropolis Theatre Co. v City of Chicago,* 228 US 61, 69–70 (1913). We do not wish to inhibit state experimental classifications in a practical and troublesome area, but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose." In *McGinnis,* the court was dealing with a statute which allowed good-time credit for jail time served at different rates for purposes of eligibility for parole, depending on whether the time had been served in a county jail while awaiting trial or in a penitentiary. In discussing this problem Justice Powell said: (pp 269–270): "We note, further, that the distinction of which appellees complain arose in the course of the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society. The determination of an optional time for parole eligibility elicited multiple legislative classifications and groupings, which the court below rightly concluded require only some rational basis to sustain them." In light of those pronouncements we turn now to an examination of the legislative history of the section in question to determine whether it reflects a rational basis for the difference complained of by appellant as a denial of equal protection. The article in the CPL which contains the section under attack was enacted in 1971 (L. 1971, ch 981, § 1, eff. Sept. 1, 1971) as a material change in the prior youthful offender provisions of the Code of Criminal Procedure. The procedures of the previous statute had been characterized as "extremely cumbersome" (Practice Commentary, McKinney's Cons. Laws of N. Y., Book 11A, CPL art 720 p 315). The procedures were revised to eliminate the requirement of an investigation of the defendant prior to conviction as a condition precedent to the granting of youthful offender treatment, a requirement that had "proved prolific, time consuming, unpopular all around and expensive" and under which "in all those cases which did not result in convictions—a very substantial percentage of the total—the investigations amounted, of course, to exercises in futility" (Practice Commentary, p 316). Instead, no step in the youthful offender process is now taken until conviction, either by verdict or plea. The court then orders a presentence investigation. On the basis of the information then received it determines, *in its discretion* if it is a superior court, whether the convicted eligible youth should be afforded youthful offender status. If the court is a local criminal court and the defendant otherwise meets the requirements of CPL 720.20 (subd 1, par [b]),

it *must* grant him such status. Thus the new scheme has "practically all the virtue of the former ones while concomitantly shedding their burdensome, wasteful investigation requirements and other destructively cumbersome features" (Practice Commentary, p 317; see, also, NY Legis Ann, 1971, pp 241–242 [Governor's Memorandum to the Legislature upon submission of the proposed revision of CPL art 720 and 340.40]). Specifically, the different legislative treatment afforded eligible youths convicted in superior courts of a misdemeanor *after having been indicted for the commission of a felony* as contrasted with those convicted of a charged misdemeanor in local criminal courts may reasonably flow from a legislative intention to give recognition to the fact that persons charged with more serious crimes, felonies, must be tried in superior courts where they are entitled to a jury trial, a more cumbersome procedure likely to be accompanied by delay, whereas only persons charged with misdemeanors or petty offenses are triable in local criminal courts which, in the case of the Criminal Court of the City of New York, did not then have facilities for or afford jury trials to defendants. The drawing of a line of distinction between those *originally* accused of a felony and those *originally* accused of a misdemeanor would appear, therefore, to be a rational one, *at least in the case of one who is permitted to plead down to a misdemeanor.*[1] This conclusion is reinforced by the fact we are here dealing with sentencing status, a subject in which much room is left by the governing statutes for the exercise of judicial discretion (see Penal Law, § 60.01). Sentencing, like the definition of crimes, is purely statutory in nature. The sole constitutional limitation on sentencing is the ban on cruel and unusual punishments contained in the Eighth Amendment to the Federal Constitution and in section 5 of article I of the New York State Constitution. The purposes of imposing sentences for crime are at least two-

---

1. In *People v Brian R.* (78 Misc 2d 616, 619–620, affd 47 AD2d 599) the court declared, "There is, and can be no rational basis for treating differently youths who have been convicted of the same offense merely because one of them had originally been charged with a higher grade of offense. The restriction or classification based upon the charge made in the indictment rather than the charge proven in court is utterly capricious and irrational. It is therefore invalid under the equal protection clauses of both the State and Federal Constitutions." I view the foregoing generalization as overbroad, since it fails to take into account many relevant factors and overlooks the fact that where a conviction is the result of plea negotiation rather than a trial, the defendant, just as much as the People, should be held to his bargain and not be allowed to collect a windfall by being treated as a youthful offender *as a matter of right.* "Since, in effect, permission to enter a lesser plea is a matter of grace, reasonable conditions may be attached thereto" *(People v Esajerre* 35 NY2d 463, 466–467). It is therefore not unfair to hold that a defendant who is the beneficiary of such grace accepts it with all of the conditions of law applicable to the reduced plea. In this connection we are not dealing with a situation in which a defendant is *originally* charged by indictment solely with the commission of a misdemeanor over which a local criminal court would have jurisdiction or with the case of a defendant charged with a felony but who *after trial*—and therefore not by the grace of the District Attorney and the court—is convicted of a misdemeanor. I express no opinion whether, in each of such cases, an otherwise eligible youth would have a legitimate unequal protection complaint if he were not afforded youthful offender treatment in a superior court since trial jurisdiction of misdemeanors is possessed by superior courts only concurrently with local criminal courts (CPL 10.20, subd 1, par [d]; 10.30, subd 1, par [b]). The determination here should be limited to the precise factual situation before us.

fold; punishment for the wrong done to society or its members and rehabilitation of the convicted wrongdoer. Judges, in imposing sentences, must necessarily draw a careful line between these two often conflicting goals. In dealing with the question of the appropriate discretionary sentence to be imposed, courts operate under a legislative classification which is closely akin to those involved in social or economic legislation where, as the Supreme Court of the United States has consistently held, greater latitude is afforded legislative classifications and a statutory classification will not be set aside if a rational basis exists to sustain it *(McGinnis v Royster,* 410 US 263, *supra; Dandridge v Williams,* 397 US 471; *McGowan v Maryland,* 366 US 420; *United States v Craven,* 478 F2d 1329). As Judge Pollack noted in *Jeffery v Malcolm* (353 F Supp 395, 397-398): "In fashioning its correctional program, a State deals with different groups, problems and considerations. The standards which emerge necessarily are instinct with variation in treatment. The Equal Protection Clause does not prevent this result. What the Equal Protection Clause does forbid is an arbitrary standard or a standard which is grounded on 'suspect classifications' such as race. As the Court stated in *Smith v Follette,* 445 F2d 955, 959 (2d Cir 1971): 'Though state laws which have no rational basis whatsoever for the classifications imposed may be held to violate the Equal Protection Clause, the situations where the Equal Protection claim is one of arbitrariness, rather than intentional and invidious discrimination against a particular racial, religious, ethnic, social or political group, the state is permitted considerably greater latitude in distributing its resources and administering its laws * * * A state is often required by reason of administrative or judicial necessity to draw fine distinctions.' " It is precisely such requirements of administrative and judicial necessity which may have caused the Legislature to draw the distinction here challenged by appellant. Its action in so doing cannot therefore be successfully attacked under the Equal Protection Clauses. Appellant also attacks the classification set up by the Legislature in distinguishing between eligible youths who *must* receive youthful offender treatment and those who can be denied such treatment in the discretion of the court on the ground that, since it rests on whether the eligible youth has been indicted for a felony or simply charged with a misdemeanor, it allows the punishment imposable upon conviction to rest on the nature of an unproved charge. But this ignores the fact that it is the charge that determines in which court the defendant will be tried and its differing impact on the problems of the efficient and speedy administration of justice. It also ignores the fact that an unproved charge may, under certain circumstances, and when considered in connection with the results of the presentence investigation, be indicative of the extent and seriousness of the improper conduct of the defendant, and thereby give some indication of whether he should be given the benefit of youthful offender treatment. Clearly they are, as the Legislature indicated by the language which it used in CPL 720.20 (subd 1, pars [a], [b]) appropriate factors to be considered in determining whether youthful offender treatment should be mandated or left to the discretion of the court. Nor, despite the intimation to the contrary in *People v Brian R.* (78 Misc 2d 616, affd 47 AD2d 599), is this the first instance in which the visitation of a form of greater criminal punishment on a defendant was made to depend on an unproved charge. Thus, in *United States v Craven* (478 F2d 1329, *supra),* the United States Court of Appeals for the Sixth Circuit upheld a Federal statute (US Code, tit 18, § 922, subd [h], par [1]; § 924, subd [a]) which made it a Federal crime for anyone *under indictment* for a crime punishable by a prison term in excess

of one year to receive a firearm or ammunition shipped in interstate commerce (see, also, *United States v Thoresen,* 428 F2d 654). Appellant's conclusion that CPL 720.20 (subd 1, par [a]) is unconstitutional *as applied to him* therefore lacks merit. Appellant next contends that since the misdemeanor to which he pled guilty would ordinarily be prosecuted in a local criminal court, the sentencing court should have treated him as though he had met all the conditions imposed for sentencing under CPL 720.20 (subd 1, par [b]) and, following the mandate of that paragraph, should have granted him youthful offender status. By that contention appellant, disregarding the fact that he was before the court on a felony indictment and has already received the benefit of a reduction in the potential maximum penalty from that imposable for conviction under the felony charges to that imposable for the misdemeanor to which he pleaded guilty, seeks to obtain an additional unwarranted bonus, to wit, that he receive youthful offender treatment. To thus permit a defendant to take double advantage of the fact that "the enormous increase in the workload of the often understaffed prosecutor's offices" which makes " 'plea bargaining' * * * an essential component of the administration of justice" *(Santobello v New York,* 404 US 257, 260) by obtaining, not only a downgrading of the charges against him from felonies to a misdemeanor, but, in addition, mandatory access to youthful offender treatment, would be ironic indeed.[2] The order and judgment appealed from should therefore be affirmed.

---

2. After all, appellant was made aware by the trial court, when he was considering whether to enter his plea of guilty to a misdemeanor in satisfaction of the felony charges, that it was retaining full discretion as to whether it would grant or deny him youthful offender treatment, with the resolution depending on what the probation report showed. He cannot now achieve "circumvention of the statute by way of a plea" *(People v Butler,* 46 AD2d 422, 426). It may well be that the court would not have accepted a lesser plea if it believed that it would have mandatorily been compelled to adjudge appellant a youthful offender.