Jacob Lutsky, J.
The defendant, a 17-year-old female, was indicted by the Kings County Grand Jury and charged with the crime of criminal sale of a controlled substance in the first degree (a class A-l felony) and its related crimes.
On October 8, 1975, the defendant pleaded guilty to the reduced charge of criminal sale of a controlled substance in the third degree (a class A-III felony), with the consent of the District Attorney, in full satisfaction of all the charges pending against her.
It should be noted that at the time that defendant’s plea was offered and ultimately accepted by this court, it was fully understood by all parties, as a result of several plea negotiation sessions, that the instant plea was predicated upon the court’s statement to adjudicate the defendant a youthful offender and place her on probation for five years after a full review and evaluation of the probation report. It was further understood by all the parties that the defendant would retain *874 her right to withdraw this plea if youthful offender status and probation were not available to her.[1]
Prior to August 9, 1975, CPL 720.10 (subd 2, par [a]) forbade youthful offender treatment to any person who was indicted for any class A felony regardless of whether it was classified as A-I, A-II or A-III.
However, the Legislature in its 1975 session amended CPL 720.10 (subd 2, par [a]) to read as follows: "2. 'Eligible youth’ means a youth who is eligible to be found a youthful offender. Every youth is so eligible unless he (a) is indicted for a class A-I or A-II felony” (as amd by L 1975, ch 832, eff Aug. 9, 1975).
Thus, under the present law, which governs this case, a youth indicted for an A-III felony is eligible for youthful offender treatment, but those youths indicted for A-I and A-II felonies are still prohibited from receiving youthful offender treatment.
Counsel for the defendant has urged this court to adjudicate the defendant a youthful offender based upon her age, background, and the facts of this case, even though CPL 720.10 prohibits such a determination when a defendant is indicted for a class A-I or A-II felony.
Recently, the Appellate Division, Second Department decided the cases of People v Santiago, People v Drummond, and People v Jimeness (51 AD2d 1, hereinafter referred to as Santiago), wherein it upheld, in a 3 to 2 decision, the constitutionality of the denial of youthful offender eligibility to indicted A-felony youths. Santiago states that the decision was based upon the youthful offender statute before it was recently amended (CPL 720.10, subd 2, as amd by L 1975, ch 832, eff Aug. 9, 1975).
In the case before this court, the newly-enacted statute takes precedence and accordingly, Santiago, which did not decide the new statute, has no binding effect upon the issue herein.
In furtherance thereof, Santiago openly states that there is a conflicting question as to the constitutionality regarding CPL 720.10. The Appellate Division, with admirable candor, *875 readily admits: "Moreover, in view of the conflict which exists in the decisions, it is highly important that an authoritative ruling be made on the issue. We invite, therefore, an application for leave to appeal to the Court of Appeals from the determination reached here so that such a ruling can be made.” (51 AD2d 1, 6-7.)
This court believes that this case is one of first impression in construing the most recent amendment to CPL 720.10 (subd 2, par [a]).
The first issue confronting this court is whether the Legislature, by its August 9, 1975 amendment to CPL 720.10 (subd 2, par [a]), has established a "rational basis” upon which it can segregate the A-III indicted youth from both the A-I and A-II indicted youth for purposes of a youthful offender eligibility determination. This is coupled with the question whether the constitutional guarantees of indicted A-I and A-II youths have been infringed by an across-the-board automatic denial of youthful offender eligibility as it applies to them.
Secondly, if an indicted A-I youth, as in the case at bar, is eligible for youthful offender treatment, what sentence may be imposed by the court?
In light of the Santiago decision and its extensive discussion on the subject and issues, this court will summarize the cogent arguments it believes relevant to this case.
An examination of the purpose of the youthful offender statute is most pertinent at this point. This statute was enacted "with the praiseworthy aim that a youth between the ages of 16 and 19 should not be stigmatized for life with a criminal record because of a hasty, ill-advised, or thoughtless act, which, although deplorable in itself, was not the act of a hardened criminal” (People v Drayton, 47 AD2d 952, 953).
The Drayton case goes on to say (p 953): "As envisioned, Y. O. treatment is a natural and gradual intermediate step between the application of statutes regarding juvenile delinquency (up to 16 years of age) and adulthood. The theory is that the youth is to be allowed at least one bite before being subjected to the harsher processes of the law.”
Santiago proclaims that the purpose of youthful offender treatment is "to avoid the stigma attaching to a conviction for youths treated as youthful offenders” (51 AD2d 1, 5; emphasis supplied).
The crucial determinative factor upon which eligibility for *876 youthful offender treatment in the case of A felonies is the indictment. CPL 200.10 defines indictment as follows: "An indictment is a written accusation by a grand jury”. It is well settled in our judicial system that an indictment is merely an accusation by which the District Attorney brings an alleged crime into the Supreme Court for prosecution.
In addition, every charge to a jury expressly states that an indictment is not evidence and that it has no probative weight or value whatsoever. This is enhanced by the fact that the jury may not even see or read the indictment.
A plea of not guilty to an indictment guarantees that a defendant will be cloaked with the presumption of innocence, a concept deep rooted in our democratic system (CPL 300.10) and which has been the immemorial principle of the common law (People v Dillon, 197 NY 254).
"Both equal protection and due process emphasize the central aim of our entire judicial system — all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.’ Chambers v Florida, 309 U.S. 227, 241. See also Yick Wo v Hopkins, 118 U.S. 356, 369.” (Griffin v Illinois, 351 US 12, 17; emphasis supplied.)
The Attorney-General contends that a statute must be read at face value and is limited only to the words therein. The Attorney-General claims, "we must reject the construction * * * suggested by defendant because the obvious intention of the Legislature must be given effect without our unnecessarily reading into the statute words which are not there” by citing People v Goodwin (49 AD2d 53, and cases cited therein).
If that be the case, it would be apparent that there would-be no need to establish a judicial system to interpret the meaning of any statute. However, the Attorney-General’s contention is not the basis upon which our system is predicated.
Under the due process and equal protection clauses, the basic presumption of the constitutional validity of a duly-enacted State law disappears when a State has enacted legislation whose purpose or effect is to create classes based upon criteria that, in a constitutional sense, are inherently "suspect.”
A classification determined solely upon an accusatory instrument, while simultaneously therewith the defendant is veiled with the constitutionally-guaranteed presumption of *877 innocence, is clearly suspect in nature. This concept of implication of guilt based upon indictment runs against the grain of our whole judicial process.
Due process and equal protection mandate nothing less than that "all persons similarly circumstanced shall be treated alike.” (Royster Guano Co. v Virginia, 253 US 412, 415.)
Moreover, quite apart from the equal protection clause, a State law that impinges upon a substantive right or liberty created or conferred by the court is, of course, presumptively invalid, whether or not the law’s purpose or effect is to create any classifications (San Antonio Independent School Dist. v Rodriguez, 411 US 1, 62 [Mr. Justice Stewart, concurring]).
The Supreme Court has held numerous times that discrimination which either adversely affects a fundamental interest or is based on a distinction of a "suspect” character, must be carefully scrutinized to ensure that the distinction is necessary to promote a substantial legitimate State interest.
We now turn to the most recent decision on this subject which was decided by the Second Department’s case of Santiago.
The Santiago case (supra) affirms the proposition that an indictment is the decisive factor in determining youthful offender status. "The charge in the indictment, not the charge for which the defendant was found guilty, became the legislative choice upon which eligibility was determined. In making that choice, the Legislature did not discriminate without rational basis,” states Santiago (51 AD2d 1, 12).
Santiago’s reasoning to sustain the "rational basis” is a threefold review of our criminal process. Santiago places its justification and authority within the discretion of the Grand Jury to determine youthful offender eligibility. It is this reliance upon an ex parte accusation that governs the future of our youth. Who knows if the Grand Jury is even aware of its onerous task or what is the purpose of a youthful offender law.
Santiago analogizes and equates a Grand Jury determination with that of a petit jury. Clearly, the standard of proof required by these two separate and distinct bodies of laymen is vastly different (CPL 70.10, 70.20). A conviction (CPL 1.20, subd 13) requires proof beyond a reasonable doubt as compared to the standard for indictment which requires reasona *878 ble cause to believe that a crime was committed by the defendant.
Mr. Justice Rabin’s dissent in Santiago succinctly and clearly crystallizes the issue and declares forthrightly, "The anomalous situation created by the statute is arbitrary and capricious and unsupported by any rational basis.” (51 AD2d, at p 14.)
However, assuming arguendo this statutory test to be valid, what then is the justification for the applicability of youthful offender consideration to only indicted A-III felons by the recently-enacted statute (L 1975, ch 832).
A search of its legislative history reveals that the memorandum accompanying the introduction of the new amendment reads as follows: "Class A-III felonies were inserted into the penal law during the 1973 legislative session as a response to the appeal for tough drug laws. As such, they penalize the youthful seller or possessor of narcotics and other drugs with mandatory life sentences. Courts should be given the discretion to allow youthful offender treatment for those individuals which presently exists for those who are accused of more serious crimes.” (Emphasis added.) (NY Legis Ann, 1975, p 62.) Where is the "rational basis” that justifies singling out A-III youth felonies only?
The memorandum referred to explicitly states that the courts should have discretion regarding sentencing of youths who are facing a mandatory maximum life sentence. There is no reference to minimum sentences. This would appear to be a very careless oversight. In this context, all A felonies, regardless of whether it is an A-I, A-II or A-III, are considered to be identical in that they all impose maximum life sentences. As such, why then is there a disparity in the treatment of youths? Certainly all youths facing a mandatory life sentence should be afforded the same discretion for consideration of leniency. And if a choice must be made to deny these considerations, then what is the "rational basis” upon which this recent amendment rests?
Should not all youths receive the benefit of proper guidance and supervision if the facts so warrant? Can there not be discretion given to Judges to consider substantial grounds or extenuating circumstances for all youths which may justify the alleged illegal act and also which may serve to justify or tend to suggest a plausible excuse for such behavior, although it may be insufficient to establish a valid legal defense?
*879 The A-III youth has now been selected to stand apart from his fellow A-I and A-II youths, although all face the mandatory life sentence. Is there a "rational basis” for these separate and distinct classifications? "Classification [must] rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.” (Walters v City of St. Louis, 347 US 231, 237.)
The new statute, which permits youthful offender adjudication to be considered for A-III youths, is significantly disparate as compared to minimum sentences of not less than 6 years nor more than 8 years 4 months to life imprisonment, which is mandated for the A-II youth, and not less than 15 years nor more than 25 years to life imprisonment, which is mandated for the A-I youth.
The legislative memorandum is devoid of any explanation or statement setting forth the relevant purpose for the selection of A-III youths only. The memorandum can be deemed void for vagueness. It does not specify any articulable basis for its determination and classification. Accordingly, this court holds this decision by the Legislature to be unsupported by any "rational basis.”
Speculating further, was this "rational basis” for prohibiting A-I and A-II youths from receiving youthful offender eligibility based upon the theory of deterrence? It can be said that court calendars are excessively filled with youthful defendants.
This vital point must be examined as we review the purpose of the "Rockefeller” drug laws. These laws were enacted to punish the hard-core drug dealers, such as the importers, the local kingpins, etc. However, one question comes to the forefront. How many of these big-time dealers are indicted and subsequently convicted and punished?
Is it logical to assume that a youth can be classified equally with the hard-core dealer? Is a youth in the economic position to control a drug market and operation? The youths are merely the small-scale pushers in the drug environment who need that extra dollar. His profit is so infinitesimally minute as compared to the large-scale dealer that it "shocks the conscience” to see that the punishment is identical.
Certainly, our past has proven that deterrence by means of stricter laws is not the answer.
*880 In sum, the Legislature has failed to sustain any basis for selecting only A-III felons to be the recipients of judicial discretion.
This court firmly believes that the Legislature, in an attempt to soften the severity of the law prohibiting youthful offender treatment from being granted to any indicted class A youth, has now compounded its original unconstitutional provision by exempting only youths indicted for class A-III felonies only.
Furthermore, the Legislature has used two separate concepts in its attempt to make a rational determination. There is no reasonable ground for using an accusation as the determining factor in the imposition of sentence. Sentencing is based upon convictions, not accusations.
CPL 190.65 defines the standard of proof required to authorize an indictment. It states: "a grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.”
Subdivisions 1 and 2 of CPL 70.10 must be read in conjunction with CPL 190.65. They read as follows:
"1. 'Legally sufficient evidence’ means competent evidence, which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof * * *
"2. 'Reasonable cause to believe that a person has committed an offense’ exists when evidence of information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay.”
Nowhere in these standards does it state that the evidence must be conclusive and convincing; the evidence must only be that which "appears reliable.”
It is this test of apparent reliability which controls the fate of a youth as to his eligibility for youthful offender status. There is no consideration given to the quality of the testimony or its weight.
*881 We note the First Department’s affirmance of People v Brian R., in which Mr. Justice Polsky declared unconstitutional the failure to afford youthful offender status to an indicted A felony crime (People v Brian R., 78 Misc 2d 616, affd 47 AD2d 599). The appeal to the Court of Appeals was withdrawn by the District Attorney.
"Under the due process challenge, the restriction must fall because it gives conclusive weight to the untested allegations of the indictment. By tying the availability of youthful offender treatment to the indictment, without regard to whether the class A felony charge is sustained by a verdict is to give constitutionally impermissible significance to the ex parte Grand Jury accusation.” (People v Brian R., supra, p 619.)
In People v Goodwin (49 AD2d 53, supra), a Third Department case wherein the defendant was indicted for a class A felony and was subsequently convicted for a class E felony, that court held that the defendant was not entitled to youthful offender consideration because he was indicted for an A felony. Mr. Presiding Justice Greenblott filed a dissenting opinion attacking the rationale of the majority. This case was decided prior to August 9, 1975.
Mr. Justice Greenblott felt it was unreasonable to distinguish between potential youthful offender persons merely because they may have been charged with different crimes; he notes that the imposition of a penalty should bear no relationship to the crime charged where the youth is ultimately convicted of a lesser crime (People v Goodwin, supra, p 56).
Although the Court of Appeals refused to hear this case (mot for lv to app den Oct. 10, 1975), this court notes that the Goodwin case was a ruling under the prior youthful offender statute, whereas in the case at bar, the amended statute has created a further class distinction within the indicted A felony class.
Moreover, the reliance upon People v Drayton (47 AD2d 952, supra) by the People and the Attorney-General to support the constitutionality of CPL 720.10 is misapplied. The Drayton case specifically upheld the validity and constitutionality of CPL 720.20 and not CPL 720.10 which is applicable in this case.
Additionally, could this illusive standard refer to the distinction based upon the weight of the drug? The weight *882 difference between an A-I sale indictemnt and an A-I-II sale indictment is % of an ounce of a controlled substance. There is a great disparity in the penalty that can be imposed as between A-I, A-II and A-III felons, as heretofore explained. Yet that basis of distinction is founded upon a small weight variance. This court would suggest that the difference in weight be measured in light of the severity of the possible punishment facing a convicted felon. There should be a reevaluation of the weight standards so that the penalty fits the crime.
"Sentencing, like the definition of crimes, is purely statutory in nature. The sole constitutional limitation on sentencing is the ban on cruel and unusual punishments contained in the Eighth Amendment to the Federal Constitution and in section 5 of article I, of the New York State Constitution.” (People v Drayton, supra, p 957.)
The primary purpose of the cruel and unusual punishment clause of the Eighth Amendment as applied to the States through the Fourteenth Amendment "has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes; the nature of the conduct made criminal is ordinarily relevant only to the fitness of the punishment imposed.” (Powell v Texas, 392 US 514, 531-532.)
Presently, this %-ounce difference separates the A-III defendant from one who deals in many ounces, pounds, kilos, etc. Yet, the defendants who deal in ounces, pounds, kilos, etc., wherein the weight difference can be vastly more substantial, are classified together. This %-ounce distinction can be magnified manifoldly when a dealer in kilos can receive only 9 years more punishment than a seller of less than % of an ounce. This glaring disproportionate categorization creates harsh penalties for the small-scale youthful pusher.
A classic example of the irrational basis that permits the indictment to supersede a verdict is the "agency” defense. Undoubtedly, evidence of a sale of a controlled substance is presented to a Grand Jury. The Grand Jury votes an indictment accusing the defendant of sale, possession with intent to sell, and possession. At the trial the defendant raises the defense of agency. This defense, if proved and believed by the jury, requires an automatic acquittal of the sale; and possession with intent to sell counts of the indictment; however, the *883 defendant must be found guilty of the lesser pure possession count.
At no time did the Grand Jury have the opportunity to consider, deliberate and evaluate any evidence of the agency defense. Can it be said that the evidence before the Grand Jury was totally reliable? Was the Grand Jury able to listen to all the facts collectively? Was the Grand Jury fully apprised of all the facts? These are some of the relevant factors that should have been considered before a determination was made that the indictment forms the basis of youthful offender eligibility.
Assuming the defendant is then found guilty of a pure possession charge that is not included in the A category, then he is automatically refused youthful offender consideration if he is between the ages of 16 and 19. This is grossly in violation of our constitutional guarantees.
And lastly, the Attorney-General emphatically espouses "the Legislature, in its wisdom, has, to a degree, restricted the original theory that the otherwise eligible youth 'is to be allowed at least one bite before being subjected to the harsher processes of the law’ (People v Drayton, supra)” (emphasis added). Assuming arguendo his interpretation to be correct, it is inconceivable to this court how the Legislature can usurp a .concept for which it laid the ground-work by its enactment of the youthful offender statute.
Finally, the obvious question then arises: Since when does a mere indictment preclude a defendant from being able to shed the stigma of being labeled a "criminal”?
This court declares the answer to be never.
With all due respect to the majority opinion of the Appellate Division, Second Department in the Santiago case, this court cannot agree with its reasoning and ultimate decision. On the other hand, this court agrees wholeheartedly with the logic and rationale of the dissenting opinion therein.
In conclusion, this court finds that there is no "rational basis” to distinguish A-III youthful felons from A-I and A-II youthful felons and that the Legislature has unconstitutionally infringed upon the rights and privileges of such A-I and A-II youths.
Therefore, this court deems CPL 720.10 (subd 2, par [a]), as amended to take effect on August 9, 1975, to be arbitrary and *884 capricious. Consequently, this court declares the recently-amended youthful offender statute to be unconstitutional.
In accordance with this decision, the defendant is hereby adjudicated a youthful offender and the conviction herein is vacated.
The next issue confronting this court concerns the sentence to be imposed on an A-III adjudicated youthful offender.
Section 60.02 of the Penal Law states that a youthful offender shall be sentenced in accordance with section 60.01 of the Penal Law. There is, however, a limitation imposed upon the sentence for which a youthful offender status is substituted; that is, such sentence shall not be for an indeterminate term of imprisonment of more than four years, or, if pursuant to CPL 720.20(subd 3), for a definite or intermittent term of imprisonment of more than six months.
"It has been suggested by Irving Schwartz, Esq., in his commentary to the sentencing charts that the provisions governing mandatory imprisonment for certain specified felonies (Penal Law, 60.05) do not apply to youthful offenders (McKinney’s 1974-1975 Supp. to McKinney’s Penal Law). Mr. Schwartz contends that since section 60.02 of the Penal Law provides that sentencing of youthful offenders is to be in accordance with section 60.01 of the Penal Law, which provides for alternative sentences such as probation and conditional discharge, and no mention is made of Penal Law, 60.05, the mandatory imprisonment provisions do not apply to youthful offenders.
"Mr. Schwartz bases his contention on the fact that section 720.25 of the Criminal Procedure Law which provided that 'a youthful offender must be sentenced in the manner authorized for the criminal act for which the youthful offender finding was made’ has been repealed. The repeal of this section it is felt, means that sentencing of youthful offenders is no longer pursuant to all the provisions of the Penal Law, including the mandatory prison sentences for certain specified crimes. Rather, now, only section 60.01 governs the sentencing of youthful offenders.
"The position outlined above is not without problems. Section 60.02 states that sentencing shall be in accordance with subdivisions 2, 3, or 4 of section 60.01 'for the crime for which the youthful offender finding was substituted’. Section 60.01 however, does not merely list the sentences which may be *885 given. Rather, it lists sentences and states that they may be imposed where authorized by a specific article of the Penal Law. Thus, conditional discharge may be imposed where authorized by article 65. Section 65.05 prohibits the granting of a conditional discharge where sentence is to be imposed for an article 220 felony or is otherwise required by section 60.03 or section 60.05.” (Handbook of Dangerous Drug/Predicate Felony and Sentencing Laws of the State of New York, 1975 Edition, as published by the Office of the New York City Administrative Judge.)
The court, after extensively reviewing the applicable statutes and their commentaries, and after examining numerous legislative memoranda and documents on this subject, is convinced that the Legislature’s clear intent was to confer discretion on the Trial Judge to consider probation for an eligible youth being sentenced as an A-III felon.
"The purposes of imposing sentences for crime are at least twofold; punishment for the wrong done to society or its members and rehabilitation of the convicted wrongdoer. Judges, in imposing sentences, must necessarily draw a careful line between these two often conflicting goals.” (People v Drayton, supra, pp 957-958.)
Of paramount importance, of course, is what is in the best interest of all concerned. The alternative between incarceration and probation is not an easy choice.
The advantages of probation lie in the broader range of rehabilitative alternatives and resources available outside of prison. The following are some of the factors that should be considered by a court in determining whether to place a defendant on probation (see, also, Penal Law, § 65.00, subd 1, par [a]).
(1) The offender’s criminal conduct neither caused nor actually threatened serious harm.
(2) The offender did not contemplate or intend that her criminal conduct would cause or threaten serious harm.
(3) There were substantial grounds tending to excuse or justify the offender’s criminal conduct, though failing to establish a defense.
(4) The offender had led a law-abiding life for a substantial period of time before the commission of the present crime.
(5) The offender is likely to respond affirmatively to probationary or other community supervision.
*886 (6) The offender’s conduct was the result of circumstances unlikely to recur.
(7) The character, history and attitudes of the offender indicate that she is unlikely to commit another crime.
(8) Imprisonment of the offender would entail undue hardship to dependents.
(9) The correctional programs within the institutions to which the offender would be sent are inappropriate to her particular needs or would not likely be of benefit to her.
This court. has ordered and is in receipt of a full and complete probation report of this defendant.
The report states that the defendant was born in Chicago and came to New York with her parents when she was two years old. The defendant’s parents resided together in a common-law relationship for almost 10 years before they separated. The defendant’s father returned to Puerto Rico while her mother resides in Brooklyn.
The defendant lived with a codefendant in a common-law relationship for almost a year and a half. It is this relationship that led to her involvement in this case. From the facts presented, it appears that the defendant’s role in this scheme was only that of a passive participant and not of a hard-core drug dealer. From their union they have one child, aged two, who resides with the defendant. The defendant no longer resides with her codefendant. She now resides with her child in Brooklyn and is receiving public assistance.
The Probation Department recommends "youthful offender treatment for this defendant in view of her lack of serious offenses in the past.” This defendant is in need of community supervision and guidance which only probation can offer. She is an "immature youth” who needs assistance. She must be taught to effectively function as a useful member of society.
Upon analyzing and evaluating the probation report in light of the afore-mentioned criteria for probation, this court deems a sentence of probation to be in the best interests of all parties.
Therefore, it is the judgment of this court that this defendant be granted youthful offender status and the conviction herein be vacated, and further, the defendant is hereby sentenced to a period of probation not to exceed five years.

. In the Santiago case (infra), both the majority and minority disagree on the question as to whether the acceptance of a plea waives jurisdictional defects such as consideration for youthful offender treatment. In the case at bar, however, waiver should not be a factor since the plea was offered and accepted on the specific condition that the defendant would receive youthful offender treatment and be placed on probation.