**STATE of Utah, Plaintiff and Appellee,**

v.

**Gerald Glen BELL, Defendant and Appellant.**

**No. 870150.**

Supreme Court of Utah.

Nov. 28, 1989.

M. Cort Griffin, Pleasant Grove, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant appeals his convictions of attempted second degree murder [1] and aggravated robbery [2] and the dual sentences imposed. The principal issues on appeal are (1) whether intent is an element of proof of attempted second degree felony-murder, and (2) whether the statutory procedure which permits the prosecution of juveniles as adults is constitutional.

In October 1986, defendant and D.P., both seventeen years of age, stopped at a service station in Fillmore, Utah, for the purpose of committing a theft. Defendant put gas in the car and then went inside with a gun concealed in his waistband. He took a six-pack of soda pop out of the cooler and placed it on the sales counter along with a package of cigarettes. He then asked the attendant, Carley Penney, for another package of cigarettes from the shelf behind her. When she turned around with the cigarettes, defendant shot her in the head. The gun used was a single action Ruger pistol which is normally fired by first pulling the hammer back to cock it and then pulling the trigger. However, the

---

1. In violation of Utah Code Ann. § 76–5–203(1)(a) (Supp.1989) and § 76–4–101(1) (1978), a second degree felony pursuant to Utah Code Ann. §§ 76–5–203(2), 76–4–102(2) (Supp. 1989).

2. In violation of Utah Code Ann. § 76–6–302 (1978) (amended 1989), a first degree felony.

pistol can also be fired by holding the trigger back while releasing the hammer.

Defendant left, taking the products without paying for them. When he got back in the car, D.P. asked, "What happened?" Defendant responded, "I shot her." When asked "Where?" he said, "In the head." D.P. asked if she was dead, and defendant answered, "Yeah, I think so." The station attendant did not die, nor did her unborn child, which was taken by Caesarean section. Defendant and D.P. were arrested later in the evening in Cedar City, Utah.

Defendant was initially charged, directly in the district court,[3] with one count of aggravated robbery[4] and two counts of attempted first degree murder during the commission of a robbery.[5] The juvenile court thereafter denied defendant's motion to recall jurisdiction,[6] and the State subsequently amended the information to charge defendant with one count of attempted second degree felony-murder[7] and one count of aggravated robbery.[8]

Following a bench trial which proceeded on the basis of the stipulated facts hereinabove recited, the trial judge concluded that the shooting was intentional. Thereafter, he sentenced defendant to a term of one to fifteen years for the attempted murder and to a term of five years to life for the aggravated robbery, the sentences to run concurrently.

## I

Defendant moved to vacate the conviction and sentence for aggravated robbery, in part relying upon this Court's decision in *State v. Shaffer*[9] for the proposition that

robbery was a predicate offense that merged into the offense of attempted felony-murder. This apparently prompted the State to seek and obtain a further amendment of the information, charging defendant with the intentional offense of attempted second degree murder,[10] so as to conform the information with the convictions and sentences already imposed by the court. The facts of this case differ significantly from those in *Shaffer*, inasmuch as in *Shaffer* the offense of murder was in fact committed, not merely attempted. For that reason, *Shaffer* is not supportive of defendant's position.

Utah Code Ann. § 76-5-203 (Supp.1989) provides in pertinent part:

(1) Criminal homicide constitutes murder in the second degree if the actor:

(a) intentionally or knowingly causes the death of another;

. . .;

(d) while in the commission [or] attempted commission ... of aggravated robbery....

(2) Murder in the second degree is a felony of the first degree.

Utah Code Ann. § 76-4-101(1) (1978) provides that a person is guilty of an attempt to commit the crime if, acting with the kind of culpability otherwise required for the commission of the offense, he or she engages in conduct constituting a substantial step toward the commission of the offense.

In the instant case, the State elected to charge and try defendant for attempted second degree felony-murder in violation of section 76-5-203(1)(d) rather than for the

---

**3.** Pursuant to the provisions of Utah Code Ann. § 78-3a-25(6) (1987).

**4.** In violation of Utah Code Ann. § 76-6-302 (1978) (amended 1989).

**5.** In violation of Utah Code Ann. § 76-5-202 (Supp.1989) and § 76-4-101(1) (1978), a first degree felony pursuant to Utah Code Ann. §§ 76-5-202(2), 76-4-102(1) (Supp.1989).

**6.** Pursuant to Utah Code Ann. § 78-3a-25(9) (1987).

**7.** In violation of Utah Code Ann. § 76-5-203(1)(d) (Supp.1989), a second degree

felony pursuant to Utah Code Ann. §§ 76-5-203(2), 76-4-102(2) (Supp.1989).

**8.** A first degree felony in violation of Utah Code Ann. § 76-6-302 (1978) (amended 1989).

**9.** 725 P.2d 1301, 1313-14 (Utah 1986).

**10.** In violation of Utah Code Ann. § 76-5-203(1)(a) (Supp.1989) and § 76-4-101(1) (1978), a second degree felony pursuant to Utah Code Ann. §§ 76-5-203(2), 76-4-102(2) (Supp. 1989). The charge of aggravated robbery was not modified in the latest amended information.

intentional offense of attempted second degree murder as provided by section 76–5–203(1)(a). It is apparent from the record that this was done in an effort to avoid the burden of having to prove intent to kill. This is to be seen in that prior to trial, the judge made the observation that it would seem that attempt crimes could only be committed with requisite intent. However, counsel on both sides were of the view that intent was not an issue or an element of proof of the offense of attempted second degree felony-murder as charged. Indeed, defense counsel took the position that although defendant intentionally pointed the gun at the victim, he did not intend to fire it and that if the State were to prove that the shooting was intentional, it would simply have proven more than was required to convict of attempted second degree felony-murder as charged. Defendant cited and relied upon *State v. Hansen* [11] in support of his position. The State also relied upon the felony-murder doctrine espoused in *Hansen* for the proposition that intent is not an element of proof of felony-murder.

■ The facts of this case are also materially different from those of *Hansen*, because in *Hansen*, as in *Shaffer*, the offense of felony-murder was in fact committed. The issue thus presented is whether the principles of felony-murder applied in *Shaffer* and *Hansen* have equal application to the offense of attempted murder. We conclude that they do not.

The crime of attempted murder does not fit within the felony-murder doctrine because an attempt to commit a crime requires proof of an intent to consummate the crime,[12] and numerous courts have held that the crime of attempted murder requires proof of intent to kill.[13] At least two other states with attempt statutes similar to Utah's have determined that attempted murder requires a specific intent to kill. In *State v. Huff*,[14] the Supreme Court of Maine interpreted its attempt statute, which provides in part:

A person is guilty of criminal attempt if, *acting with the kind of culpability required for the commission of the crime,* and with the intent to complete the commission of the crime, he engages in conduct which, in fact, constitutes a substantial step toward its commission.[15]

(Emphasis added.) The court held:

Where a discrepancy exists in the culpable mental states between criminal attempt and the offense attempted, the criminal attempt to commit such a crime is a "logical impossibility." ... Before a person can be convicted of attempted murder, he must act with the intent to cause the death of another human being.[16]

Likewise, in *Head v. State*,[17] the Supreme Court of Indiana interpreted an attempt statute similar to Utah's:

A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of

**11.** 734 P.2d 421 (Utah 1986).

**12.** *See* C. Torcia, 4 *Wharton's Criminal Law* § 741, at 565, § 743, at 571–72 (14th ed. 1981).

**13.** *See, e.g., People v. Collie,* 30 Cal.3d 43, 62, 634 P.2d 534, 545, 177 Cal.Rptr. 458, 469 (1981) (specific intent to kill is an element of attempted murder); *State v. Rodgers,* 198 Conn. 53, 62, 502 A.2d 360, 366 (1985) ("The mental state associated with the crime of attempt to commit murder is the 'intent to cause the death of another person'" (citation omitted).); *People v. Mitchell,* 98 Ill.App.3d 398, 402, 53 Ill.Dec. 867, 870, 424 N.E.2d 658, 661 (1981) ("[O]ffense of attempt (murder) requires the mental state of specific intent to commit murder."); *State v. Strother,* 362 So.2d 508, 509 (La.1978) (attempt

to commit either first or second degree murder requires specific intent to kill); *Flanagan v. State,* 675 S.W.2d 734, 741 (Tex.Crim.App.1982) ("[A] specific intent to kill is a necessary element of attempted murder."); *see* R. Perkins & R. Boyce, *Criminal Law,* at 637–38 (3d ed. 1982); W. LaFave & A. Scott, Jr., *Criminal Law,* at 500–01 (2d ed. 1972); Note, *Attempted Murder: Should Specific Intent to Kill be Required?,* 31 Baylor L.Rev. 243 (1979).

**14.** 469 A.2d 1251 (Me.1984).

**15.** Me.Rev.Stat.Ann. 17–A, § 152 (1983).

**16.** 469 A.2d at 1253 (citation omitted).

**17.** 443 N.E.2d 44 (Ind.1982).

the crime.[18]

In that case, an attempted murder was committed during the course of a robbery. The court analyzed the history and purpose of the felony-murder rule and concluded:

> [W]hether the underlying felony has been completed or attempted, the felony-murder rule cannot be applied unless the death of another occurred by virtue of the commission or attempted commission of the underlying felony. In other words, absent death the applicability of the felony-murder rule is never triggered....
>
> ....
>
> ... We do not believe the fact that bodily injury has occurred in the commission or attempted commission of one of [the felonies which trigger the felony-murder rule] warrants the presumption that, as a matter of law, the perpetrator possessed the *mens rea* requisite to murder....
>
> ....
>
> ... It does not follow that in purely arbitrary circumstances, the legislature intended to create a discretionary vehicle whereby the state could seek a conviction for attempted murder without an obligation to prove the intent to kill.[19]

Other courts have also held that the crime of attempted felony-murder does not exist.[20] Indeed, in the face of logic, the conclusion is inescapable that the crime of attempted murder requires proof of intent to kill. Therefore, we also hold that attempted felony-murder does not exist as a crime in Utah.

The trial in this case did not proceed in the usual fashion. Rather, defendant was tried on stipulated facts presented to the trial judge. After evaluating the facts and hearing arguments from both sides, the court found defendant guilty of attempted second degree murder, but not on the basis of the felony-murder doctrine alleged in the information. In issuing his ruling, the trial court stated:

> The Court also finds that the defendant is guilty of the alleged offense of Attempted Murder in the Second Degree....
>
> ....
>
> And also the Court finds that the Attempted Second Degree Homicide was committed by the defendant in that at the time he was in the course of committing the robbery offense, he pointed a loaded .22 pistol at the head of the [victim] and caused the same to be discharged while so pointing it, which leaves the Court to conclude that that was an act done intentionally, intending to shoot her and cause her death.
>
> And the Attempted Second Degree Homicide offense is complete by that finding.
>
> As to whether or not there would be a sufficient Attempt provided for through the operation of a felony in the murder doctrine, of course, *the Court is not taking any position on that.*
>
> *But the Court is convinced that the act of the shooting was an intentional act.* Therefore, the Attempted Second Degree Homicide charge is established and the Court finds the defendant guilty.

(Emphasis added.) The court entered written findings and conclusions which paralleled the verbal ruling.

This Court's standard of review is that a trial court's findings should not be set aside unless clearly erroneous.[21] Application of that standard in the instant case requires that the findings of the trial court remain intact.

---

**18.** Ind.Code § 35–41–5–1 (1985).

**19.** 443 N.E.2d at 50–51; *see Anderson v. State*, 448 N.E.2d 1180, 1187 (Ind.1983) ("[T]he crime of attempted felony murder does not exist.").

**20.** *See, e.g., People v. Viser*, 62 Ill.2d 568, 581, 343 N.E.2d 903, 910 (1975) ("There can be no felony murder where there has been no death, and the felony murder ingredient of the offense of murder cannot be made the basis of an indictment charging attempt murder."); *People v. Burress*, 122 A.D.2d 588, 589, 505 N.Y.S.2d 272, 273, *appeal denied*, 68 N.Y.2d 810, 507 N.Y.S.2d 1027, 499 N.E.2d 876 (1986) ("[T]here can be no attempt to commit a crime that does not involve a specific intent"; defendant's conviction for attempted felony murder reversed.).

**21.** Utah R.Civ.P. 52(a); *State v. Kelly*, 770 P.2d 98, 99 (Utah 1988).

■ The trial court concluded from the stipulated facts, admitted by defendant, that defendant intended to shoot the victim and cause her death. Although defendant was charged with attempted murder in the commission of aggravated robbery, the stipulated facts support the court's finding that the attempted murder was intentionally committed. Thus, unlike *Shaffer,* the aggravated robbery in this case was not a predicate offense and was therefore not an element of the charged offense of attempted murder.

■ Following the conviction, the State was allowed to amend the information to conform to the findings of the trial court. Rule 4 of the Utah Rules of Criminal Procedure, which allows such amendment, provides in part:

(d) The Court may permit an indictment or information to be amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. After verdict, an indictment or information may be amended so as to state the offense with such particularity as to bar a subsequent prosecution for the same offense upon the same set of facts.

Ordinarily, such a significant amendment as was made here may infringe on a defendant's right to be informed of the nature of the accusations against him. However, due to circumstances unique to this case, the amendment did not violate the notice requirements.

As previously indicated, this case was tried to the bench on the basis of stipulated

facts. Those stipulated facts, which were signed by the prosecutor, defense counsel, and defendant, provided the basis for the trial court's findings. The stipulated facts were prepared before the trial, and the record indicates that they were reviewed by defendant prior to being presented to the trial court and that his signature on the stipulation amounted to an admission of the facts. Therefore, defendant could hardly claim a notice violation when the information was amended to conform to facts of which defendant was fully aware before they were ever presented to the trial court and his attorney was afforded an opportunity to argue the issue of intent to the court. Furthermore, defendant was originally. charged with two counts of attempted capital homicide, which requires that a defendant act intentionally.[22] Defendant was bound over to stand trial on those charges. Therefore, he had ample notice of the nature of the charges. The post-conviction amendment of the information was merely *pro forma.*

We therefore conclude that the separate convictions and sentences should stand undisturbed.

## II

Defendant also challenges the constitutionality of the statutory provisions which permit his prosecution as an adult. He contends that the procedure violates rights to due process and equal protection of the law afforded by both the federal and state constitutions.[23] The applicable statute, Utah Code Ann. § 78–3a–25 (1987), provides in pertinent part:

---

**22.** See Utah Code Ann. § 76–5–202(1) (Supp. 1989), § 76–4–101(1) (1978).

**23.** The constitutionality of similar statutes has been raised through a myriad of forms and upheld in a majority of jurisdictions considering such claims. *See, e.g., In re D.G.,* 733 P.2d 1199, 1200–03 (Colo.1987) (en banc); *People v. Thorpe,* 641 P.2d 935, 937–40 (Colo.1982) (en banc); *State v. Cain,* 381 So.2d 1361, 1363–68 (Fla.1980), *superseded on other grounds by statute as stated in Banks v. State,* 520 So.2d 43 (Fla.App.1987), *review denied,* 529 So.2d 693 (Fla.1988); *People v. Handley,* 51 Ill.2d 229, 231–35, 282 N.E.2d 131, 134–35, *cert. denied,* 409 U.S. 914, 93 S.Ct. 247, 34 L.Ed.2d 175 (1972);

*State v. Grayer,* 191 Neb. 523, 524–27, 215 N.W.2d 859, 860–61 (1974); *People v. Mason,* 99 Misc.2d 583, 584–89, 416 N.Y.S.2d 981, 983–86 (Sup.Ct.1979); *Jones v. State,* 654 P.2d 1080, 1082–84 (Okla.Ct.Crim.App.1982); *In re N.H.B.,* 777 P.2d 487, 489–90 (Utah Ct.App.1989); *Jahnke v. State,* 692 P.2d 911, 927–29 (Wyo. 1984). Defendant does not specifically demonstrate that the state and federal analyses differ. Therefore, we treat his claims as based only upon federal constitutional provisions. *See State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Ashe,* 745 P.2d 1255, 1257 n. 2 (Utah 1987).

(1) If the petition in the case of a person 14 years of age or older alleges that he committed an act which would constitute a felony if committed by an adult, and if the court after full investigation and a hearing finds that it would be contrary to the best interests of the child or of the public to retain jurisdiction, the court may enter an order certifying to that effect and directing that the child be held for criminal proceedings in the district court, with a hearing before a committing magistrate to be held as in other felony cases. The provisions of § 78-3a-35 and other provisions relating to proceedings in children's cases are, to the extent they are pertinent, applicable to the hearing held under this section.

(2) In considering whether or not [sic] to waive jurisdiction over the juvenile, the juvenile court shall consider the following factors:

(a) the seriousness of the offense and whether the protection of the community requires isolation of the child beyond that afforded by juvenile facilities;

(b) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(c) whether the alleged offense was against persons or property, greater weight being given to offenses against persons;

(d) the maturity of the juvenile as determined by considerations of his home, environment, emotional attitude, and pattern of living;

(e) the record and previous history of the juvenile;

(f) the likelihood of rehabilitation of the juvenile by use of facilities available to the juvenile court; and

(g) the desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the district court.

(3) The amount of weight to be given to each of the factors listed in Subsection (2) is discretionary with the court.

(4) The juvenile court judge may enter an order certifying a juvenile to stand trial as an adult upon making a finding of any one or more of those factors set forth in Subsection (2).

(5) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history shall be considered by the court, but the court, if requested by the child, his parent, guardian, or other interested party, shall require the person, if reasonably available, or agency preparing the report and other material to appear and be subject to both direct and cross-examination. The certification hearing is a dispositional proceeding, and while the juvenile court may hear evidence of the crime to establish that there is a reasonable relationship between the charge and the juvenile, the court need not hold a preliminary hearing to establish probable cause that the juvenile committed the offense.

(6) When a petition in the case of a person 16 years of age or older alleges any class of criminal homicide or attempted criminal homicide, aggravated robbery, or forcible sodomy, aggravated arson, aggravated sexual abuse of a child, aggravated sexual assault, aggravated burglary, or aggravated kidnapping, the juvenile is subject to the jurisdiction of this court under § 78-3a-16, unless an indictment on the charge is returned by the grand jury or a criminal information is filed by the county attorney, in which event this court is divested of jurisdiction under § 78-3a-16, the charge shall be made, and the proceedings regarding the charge shall be conducted in every respect as if the juvenile were an adult. A copy of the information or indictment shall also be filed forthwith in the juvenile court as notice to that court.

(7) When a criminal information or indictment is filed in a court of competent jurisdiction before a committing magistrate, charging the child or person, the jurisdiction of the Division of Youth Corrections and the jurisdiction of the juvenile court over him is terminated regarding that offense and any subsequent misdemeanors or felonies charged against

him, except as provided in Subsection 78–3a–25(9).

(8) Upon conviction a magistrate may impose the penalties set forth in the criminal code or, with the approval of the Division of Youth Corrections, commit the juvenile to the care, custody, and jurisdiction of the Division of Youth Corrections under the conditions specified by the division. A juvenile may be convicted under this section on the charges filed or on any other offense arising out of the same criminal episode.

(9) The juvenile court regains jurisdiction under § 78–3a–16 and any authority which was previously exercised over the juvenile when: (a) a magistrate of the circuit court determines there is insufficient probable cause for the juvenile to stand trial on the allegation or amended allegation; or (b) there is an acquittal or finding of not guilty or dismissal of the charges; or (c) the juvenile court judge files a request for a return of jurisdiction in the court where the allegations are pending. The request shall be filed within ten calendar days from the date a copy of the indictment or information is filed with the juvenile court. Upon receipt of the request, jurisdiction vests with the ·juvenile court. The child or his guardian may move the juvenile court to recall jurisdiction by filing a motion and requesting a hearing before a juvenile court judge. The motion shall be filed and hearing held within ten calendar days from the date of the filing of the information. In determining whether or not to request a return of jurisdiction the juvenile court judge shall consider the juvenile's age, legal record, and the seriousness of the charge. When the juvenile court regains jurisdiction under this subsection, the minor shall be returned to the juvenile court for further proceedings, which may include certification.

Two means are thus provided by which a juvenile may be prosecuted as an adult, namely, by the juvenile court's waiver of jurisdiction and certification to the district court or by the direct filing of a grand jury indictment or an information in the district court.

■ In challenging the statute's constitutionality based upon an equal protection claim, defendant does not dispute that the State has a compelling interest in dealing with juveniles over the age of sixteen who are charged with the offenses enumerated in section 78–3a–25(6). Instead, he contends that because the statute does not require all juveniles alleged to have committed the offenses set forth therein to be treated the same, the legislation is not precisely tailored to further the State's compelling interest. In essence, defendant asserts that the discretionary direct filing process allowed under the statute violates principles of equal protection by infringing upon a fundamental right, namely, the right to personal liberty. This claim is without merit.

In reviewing defendant's contentions, it is necessary to begin with the principle that "the prerogative of the legislature as the creators of the law is to be respected." [24] Consequently, its enactments are afforded a presumption of validity, and a legislative act will not be stricken unless the interests of justice require the same because the law is clearly in conflict with that set forth in the constitution.[25] Indeed, this Court has a duty to construe a statute whenever possible so as to effectuate legislative intent and avoid and/or save it from constitutional conflicts or infirmities.[26] As we have heretofore stated:

> [W]hatever may or may not be the conviction of mind, or the personal desires of this [C]ourt, or the justices thereof, to determine such policy, our commitment is to the principle of judicial restraint, necessary and desirable under our system,

**24.** *Zamora v. Draper,* 635 P.2d 78, 80 (Utah 1981).

**25.** *Id.*

**26.** *State v. Lindquist,* 674 P.2d 1234, 1237 (Utah 1983); *State v. Casarez,* 656 P.2d 1005, 1008

(Utah 1982); *In re Boyer,* 636 P.2d 1085, 1088 (Utah 1981); *accord People v. Williams,* 100 Misc.2d 183, 185–86, 418 N.Y.S.2d 737, 739 (Cnty.Ct.1979).

which honors the doctrine of separation of powers of the three branches of our government. Therefore, it is not within the province of the courts to intrude upon the legislative prerogative and declare a statute unconstitutional unless it is determined to be so beyond a reasonable doubt.[27]

Regarding the fundamental principles of equal protection, it has been repeatedly noted that such constitutional provisions do not require that things different in fact be treated in the law as though they were the same [28] or that equal treatment be afforded all persons without recognition of differences in relevant and reasonable circumstances.[29] A statute does not offend the constitution merely because in practice it subjects some persons to disparate treatment which is more oppressive than others must bear. Were it otherwise, the government would be stripped of its power to legislate intelligently.[30]

Instead, when classifications are created, the pertinent inquiry for purposes of equal protection is whether some reasonable nexus exists between the classification implemented and a valid governmental objective.[31] Applying these principles, equal protection safeguards are offended only if it is determined that the subject classification rests upon grounds wholly irrelevant to the achievement of the government's purpose.[32] Since it must be presumed that the legislative branch acted within its constitutional power in creating law, despite any inequality which results in its practice, "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [33]

Given the above guidelines, it is necessary to determine which standard of review should be applied in examining the challenged legislation.[34] Traditionally, this determination has involved a dual approach to equal protection analysis. One approach requires a determination whether a rational basis exists between the legislative purpose and the challenged classification.[35] If such a basis is found, the challenged classification "does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " [36]

An alternate examination is referred to as the "strict scrutiny test." This approach is used if a challenged classification is "suspect" or if a "fundamental interest" is involved.[37] Classifications which have been deemed "suspect" for purposes of equal protection analysis include those based upon alienage, origin, and race. In contrast, interests which have been classified as "fundamental" include voting, travel, procreation, the right of free speech, the right of a defendant to appeal a criminal

**27.** *Stone v. Department of Registration,* 567 P.2d 1115, 1117 (Utah 1977) (footnotes omitted); *see also Gray v. Department of Employment Security,* 681 P.2d 807, 824 (Utah 1984) (Durham, J., concurring and dissenting) (operation of the "principle of prudent restraint").

**28.** *Smith v. State,* 444 S.W.2d 941, 943–44 (Tex. Civ.App.1969).

**29.** *Id.; State v. Bishop,* 717 P.2d 261, 266 (Utah 1986); *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961).

**30.** *Smith,* 444 S.W.2d at 943.

**31.** *Id.* at 944; *Pyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982); *see Bishop,* 717 P.2d at 266; *Mountain Fuel Supply Co. v. Salt Lake City Corp.,* 752 P.2d 884, 887 (Utah 1988); *Thompson v. Salt Lake City Corp.,* 724 P.2d 958, 959 (Utah 1986).

**32.** *See McGowan,* 366 U.S. at 426, 81 S.Ct. at 1105.

**33.** *Id.* (citations omitted).

**34.** *Mason,* 99 Misc.2d at 584, 416 N.Y.S.2d at 983; *Bishop,* 717 P.2d at 266.

**35.** *Mason,* 99 Misc.2d at 584–87, 416 N.Y.S.2d at 983–84; *Pyler,* 457 U.S. at 216, 102 S.Ct. at 2394; *J.J.N.P. Co. v. State ex rel. Div. of Wildlife Resources,* 655 P.2d 1133, 1137 (Utah 1982).

**36.** *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, *reh'g denied,* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911)), *quoted in Mason,* 99 Misc.2d at 585, 416 N.Y. S.2d at 984.

**37.** *Mason,* 99 Misc.2d at 586, 416 N.Y.S.2d at 984; *Pyler,* 457 U.S. at 216–17, 102 S.Ct. at 2394–95; *J.J.N.P. Co.,* 655 P.2d at 1137.

conviction, and perhaps the right of privacy.[38] Application of the strict scrutiny test requires the court to determine whether the challenged statute "is promoting a compelling state interest."[39]

In recent years, courts have also employed an intermediate standard of review for legislative classifications which are not "facially invidious" but may nonetheless concern "recurring constitutional difficulties."[40] Application of this standard involves inquiring whether the classification may be viewed as furthering a substantial state interest.[41]

Upon consideration of these standards of review and the relevant cases applying the same, defendant's claims do not merit a strict scrutiny or a substantial interest analysis. Regarding the former, the classification and issue herein do not involve those concepts traditionally invoking strict scrutiny review. Additionally, age has not been determined to be, and defendant does not claim that it is, a suspect classification.[42] Rather, defendant asserts that he was denied equal protection since he was not afforded treatment as a youthful offender. As noted, he urges invocation of a strict scrutiny analysis on the theory that

"liberty" is a fundamental right. These assertions will not withstand analysis.

A juvenile has no right to treatment in the juvenile system[43] or "to be specially treated as a juvenile delinquent instead of a criminal offender."[44] This concept is well established. As was observed in *People v. Mason*,[45] " 'There is no constitutional right to youthful offender status and such treatment is entirely a gratuitous creature of the legislature subject to such conditions as the legislature may impose without violating constitutional guarantees.' "[46] That court thereafter considered the defendant's assertion that it should apply the strict scrutiny test since the fundamental right of the defendant's liberty was involved. In concluding that such contention did not withstand analysis, the court stated that because a deprivation of liberty occurs only upon the defendant's conviction of a crime for which he is criminally responsible, and since there is no constitutional right to youthful offender treatment, a defendant cannot assert a valid claim of denial of liberty if he or she is charged and sentenced as an adult in accordance with the law.[47]

---

**38.** *Mason*, 99 Misc.2d at 586, 416 N.Y.S.2d at 984 (citation omitted); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 nn. 3–4, 96 S.Ct. 2562, 2566 nn. 3–4, 49 L.Ed.2d 520 (1976), and cases cited therein.

**39.** *Mason*, 99 Misc.2d at 586, 416 N.Y.S.2d at 984.

**40.** *Pyler*, 457 U.S. at 217–18, 102 S.Ct. at 2395; *see Mason*, 99 Misc.2d at 585, 416 N.Y.S.2d at 984.

**41.** *See Pyler*, 457 U.S. at 217–18, 102 S.Ct. at 2395; *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) (gender); *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) (illegitimacy).

**42.** *Mason*, 99 Misc.2d at 586, 416 N.Y.S.2d at 984; *Purdie v. University of Utah*, 584 P.2d 831, 833 (Utah 1978); *see In re K.V.N.*, 116 N.J.Super. 580, 590, 283 A.2d 337, 343 (1971), and cases cited therein, *aff'd*, 60 N.J. 517, 291 A.2d 577 (1972); *see also Lamb v. Brown*, 456 F.2d 18, 20 (10th Cir.1972) (test applied in equal protection challenge to statute affording female juveniles benefit of juvenile court while limiting such benefit to males of same age).

**43.** *State in re Atcheson*, 575 P.2d 181, 184 (Utah 1978); *cf. Burnham v. Hayward*, 663 P.2d 65, 67 (Utah 1983) (no right to certification hearing).

**44.** *Cain*, 381 So.2d at 1363 (citing *In re Gault*, 387 U.S. 1, 16, 87 S.Ct. 1428, 1437, 18 L.Ed.2d 527 (1967)).

**45.** 99 Misc.2d 583, 416 N.Y.S.2d 981.

**46.** *Id.* at 586, 416 N.Y.S.2d at 984 (quoting *People v. Drayton*, 39 N.Y.2d 580, 584, 385 N.Y.S.2d 1, 3, 350 N.E.2d 377, 379 (1976)); *Jahnke*, 692 P.2d at 928–29, and cases cited therein; *see Woodard v. Wainwright*, 556 F.2d 781, 785 (5th Cir.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); *Cain*, 381 So.2d at 1363; *Williams*, 100 Misc.2d at 186, 418 N.Y. S.2d at 740; *see also State v. Anderson*, 108 Idaho 454, 457, 700 P.2d 76, 79 (Ct.App.1985) (defendant had no statutory right to be proceeded against as minor).

**47.** *Mason*, 99 Misc.2d at 585, 416 N.Y.S.2d at 984. *But see People ex rel. Wayburn v. Schupf*, 39 N.Y.2d 682, 686, 385 N.Y.S.2d 518, 519, 350 N.E.2d 906, 908 (Ct.App.1976) (pretrial detention impinges on fundamental liberty right).

This conclusion is persuasive. Since the State may rightfully charge and prosecute as adults *all* juveniles meeting the qualifications and committing the offenses enumerated in section 78-3a-25, a particular defendant suffers no deprivation of liberty because the State exercises this right, notwithstanding the fact that if the State decided not to do so, through information or indictment (or based upon the court's certification decision), in the same or in any other case a defendant may receive a benefit. Similar to any benefit an adult offender might receive if the State charges or accepts a plea bargain to a lesser offense than that to which other defendants committing the same or similar crimes may be charged and prosecuted or the parole benefit a particular defendant may receive if his or her circumstances merit treatment different from other defendants committing the same or similar crimes, the mere fact that a particular juvenile may receive a benefit from not being prosecuted as an adult in a particular case neither makes the benefit a fundamental right nor invokes the liberty interest of the non-benefited juvenile (or adult) similarly situated. Accordingly, the strict scrutiny test does not apply.

Also, a middle ground test, as urged by defendant, is inappropriate in this case. The classification does not necessarily "give rise to recurring constitutional difficulties," [48] nor does it approach the level of other traditional classifications meriting substantial state interest analysis. [49] This is not to say that a defendant's liberty interest may not be at issue in other types of cases or that such interest may not be fundamental or merit sensitive review by this Court as individual circumstances demand. [50] However, concluding as defendant urges us to do would require reaching issues not properly before us and would serve to implicitly trample upon the constitutional doctrine of separation of powers and the prosecution's general discretion to consider the individual particulars of each case involving criminal activity, [51] conduct appropriate plea bargaining, and prosecute co-defendants and all other similarly situated offenders differently. [52]

■ Therefore, having determined that defendant's liberty interest is not at issue here and that the rational basis approach is the appropriate analysis in this case, it is necessary to consider whether the legislation is rationally based upon some conceivable and valid state interest or objective. [53] The principles of such analysis involve the following:

"(1) The equal protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.

"(2) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.

"(3) When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.

**48.** *Pyler,* 457 U.S. at 217, 102 S.Ct. at 2395.

**49.** *Mason,* 99 Misc.2d at 585, 416 N.Y.S.2d at 984; *supra* note 41.

**50.** *See generally State v. Murphy,* 760 P.2d 280 (Utah 1988); *State v. Richards,* 740 P.2d 1314 (Utah 1987).

**51.** *Cf. State in re Clatterbuck,* 700 P.2d 1076, 1084 (Utah 1985) (defendant certified to district court based on individual particularities of case).

**52.** *See generally infra* pages 402–405 (prosecutorial discretion discussed); Utah Const. art. VIII, § 16 (Supp.1989) (responsibility of prosecutors).

**53.** *J.J.N.P. Co.,* 655 P.2d at 1137, *Hart Health Studio v. Salt Lake County,* 577 P.2d 116, 118 (Utah 1978); *McGowan,* 366 U.S. at 425–26, 81 S.Ct. at 1104–05, *quoted in State ex rel. Coats v. Rakestraw,* 610 P.2d 256, 259 (Okla.Ct.Crim.App. 1980); *Mason,* 99 Misc.2d at 585, 416 N.Y.S.2d at 984; *Smith,* 444 S.W.2d at 943–44.

"(4) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."[54]

Applying these standards, it need be initially noted that the stated purpose of the Juvenile Courts Act is

to secure for each child coming before the juvenile court such care, guidance, and control ... as will serve his welfare and the best interests of the state; to preserve and strengthen family ties whenever possible; to secure for any child who is removed from his home the care, guidance, and discipline required to assist him to develop into a responsible citizen, to improve the conditions and home environment responsible for his delinquency; and, at the same time, *to protect the community and its individual citizens against juvenile violence and juvenile lawbreaking.* To this end this act shall be liberally construed.[55]

The United States Supreme Court has stated:

Save as limited by constitutional provisions safeguarding individual rights, a State may choose means to protect itself and its people against criminal violation of its laws. The comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for its determination.[56]

Understanding that the legislative classification is entitled to a presumption of validity which may be set aside only if there are no grounds which can be conceived to justify it,[57] we conclude, as have other courts, that the legislature doubtless considered both the "rise in the number of crimes committed by juveniles as well as the growing recidivist rate among this group" and, in doing so, was entitled to determine that (1) the *parens patriae* function of the juvenile system would no longer work for certain offenders; (2) society demanded greater protection from certain juvenile offenders than that provided by the juvenile system; and (3) providing different means whereby juveniles could, through the proper exercise of discretion, be prosecuted as adults was thus necessary and reasonable.[58] Certainly, the legislature could reason that application of the statute at issue would result in most, if not all, juveniles sixteen years of age or older committing the enumerated crimes being charged and tried as adults.[59] As the Oklahoma Court of Criminal Appeals stated:

It is clear from the statute that the Legislature intended most 16 and 17–year–old persons charged with any of the enumerated offenses should be tried as adults. This is apparent from the different criteria used in making the reverse certification decision—greater weight to be given by the judge to the gravity of the offense charged, and notably absent is consideration of the sophistication and maturity and capability of distinguishing right from wrong and the likelihood of reasonable rehabilitation ... required for regular certification.... Contrary to the [district court judge's] holding that consideration of these omitted guidelines is required by *Kent v. United States*, an examination of *Kent* fails to support this holding, and we expressly reject it.[60]

**54.** *Utah Public Employees' Ass'n v. Utah*, 610 P.2d 1272, 1273–74 (Utah 1980) (quoting *Lindsley*, 220 U.S. 61, 31 S.Ct. 337).

**55.** Utah Code Ann. § 78–3a–1 (1987) (emphasis added) (repealed and reenacted 1988).

**56.** *State ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 60, 82 L.Ed. 43 (1937).

**57.** *Woodard*, 556 F.2d at 785 (citing *United States v. Bland*, 472 F.2d 1329, 1333–34 (D.C.Cir. 1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973)).

**58.** *Woodard*, 556 F.2d at 785 (citing in part *Bland*, 472 F.2d at 1334); *see Williams*, 100 Misc.2d at 188, 418 N.Y.S.2d at 741.

**59.** *See Rakestraw*, 610 P.2d at 259.

**60.** *Id.* at 258 (citations and footnote omitted). While the United States Supreme Court has discussed the critical importance of the due process rights afforded juveniles in situations where the juvenile court is waiving jurisdiction, *see Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the majority of the cases noted that have discussed application of the *Kent* factors have distinguished the same in situations involving statutes and claims compa-

To effectuate this purpose and intent, certain serious offenses were enumerated, which if charged by the prosecution in the appropriate exercise of its discretion,[61] merited a juvenile's treatment as an adult absent recall into the juvenile system.[62] This classification roughly approximates the nature of the legitimate problems perceived, fairly accommodates competing public and private concerns, and accounts for limitations on the state's ability to remedy every ill.[63]

Additionally, as with similar statutes in other states, although the potential punishment of some youngsters may be increased through the exercise of the prosecution's discretion, "ameliorative provisions in the legislation" serve to protect the juvenile. Indeed, by providing for the possible removal of the case to the juvenile court and for the possible commitment of the juvenile

to the Division of Youth Corrections, this statute is more favorable to the accused than direct filing statutes utilized and upheld as constitutional in other states.[64]

Notwithstanding the above, defendant essentially contends that the statute is not precisely tailored to further the state's interest since the prosecution has unbridled discretion to determine which child will be treated as an adult.[65] We disagree.

The general rule is that prosecutors are given broad discretion in determining whether and in what manner to prosecute each case. Indeed, as long as the prosecution has probable cause to believe that an offense has been committed, the decision regarding whether and in what manner to prosecute " 'generally rests entirely in [its] discretion.' "[66] Regarding such, this Court has heretofore stated:

rable to those in this case, including the claim that the prosecution is required to utilize those procedures necessary for due process. *See, e.g., Burnham,* 663 P.2d at 67; *Woodard,* 556 F.2d at 783–84 & nn. 12–13; *Russell v. Parratt,* 543 F.2d 1214, 1216–17 (8th Cir.1976); *United States v. Quinones,* 516 F.2d 1309, 1311 (1st Cir.), *cert. denied,* 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975); *Cox v. United States,* 473 F.2d 334, 335–36 (4th Cir.), *cert. denied,* 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973); *Bland,* 472 F.2d at 1336–37 & n. 26; *United States v. Alexander,* 333 F.Supp. 1213, 1215–16 (D.C.D.C.1971); *Thorpe,* 641 P.2d at 939–40; *Brown v. United States,* 343 A.2d 48, 49–51 (D.C.1975); *Cain,* 381 So.2d at 1365–67; *Anderson,* 108 Idaho at 457–458, 700 P.2d at 79–80; *People v. Hawkins,* 53 Ill.2d 181, 182, 290 N.E.2d 231, 232 (1972); *Handley,* 51 Ill.2d at 231–35, 282 N.E.2d at 134–35; *Jones,* 654 P.2d at 1082–84 & n. 3; *Rakestraw,* 610 P.2d at 258 & n. 1; *State v. Berard,* 121 R.I. 551, 555–59, 401 A.2d 448, 451–52 (1979); *Jahnke,* 692 P.2d at 928–29. This is the case notwithstanding the fact "that, from the defendant's viewpoint, the effect and consequences of the prosecutorial decision are the same as the effect and consequences of a judicial decision to waive juvenile court jurisdiction in a judicial system which provides such courts." *Cox,* 473 F.2d at 336; *cf. State in re Clatterbuck,* 700 P.2d 1076 (*Kent* standards considered in instance where trial court certified juvenile to be tried as adult). In *Louisville Gas & Electric Co. v. Coleman,* 277 U.S. 32, 41, 48 S.Ct. 423, 426, 72 L.Ed. 770 (1928) (Holmes, J., dissenting), *quoted in Mason,* 99 Misc.2d at 588–89, 416 N.Y.S.2d at 985–86, Justice Holmes stated:

When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any oth-

er extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.

**61.** *See supra* notes 51–52 and accompanying text; *supra* pages 395–397; *infra* pages 402–405.

**62.** *Thorpe,* 641 P.2d at 940; *see Cain,* 381 So.2d at 1364; *People v. Santiago,* 51 A.D.2d 1, 379 N.Y.S.2d 843, 854 (1975), *superseded on other grounds by statute as stated in People v. Evelyn R.,* 85 Misc.2d 872, 379 N.Y.S.2d 1000 (Supp. 1976).

**63.** *Pyler,* 457 U.S. at 216, 102 S.Ct. at 2394.

**64.** *See, e.g., Mason,* 99 Misc.2d at 587, 416 N.Y. S.2d at 985; *Rakestraw,* 610 P.2d at 258–59; Utah Code Ann. § 78–3a–25(8)–(9) (1987).

**65.** *See Cain,* 381 So.2d at 1362; *Johnson v. State,* 314 So.2d 573, 577 (Fla.1975).

**66.** *State v. Geer,* 765 P.2d 1, 3 (Utah Ct.App. 1988) (citing *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985), and quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)), *cert. denied,* 773 P.2d 45 (Utah 1989).

"It is not a function of the courts to review the exercise of executive discretion, and we cannot say that it was error for the prosecutor to treat the defendants in a different manner, and we cannot review the prosecutor's decision to proceed against one defendant under an information charging him with a felony and reducing the charge against the co-defendant to a misdemeanor." [67]

Similarly, the United States Supreme Court has held:

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " [68]

The importance of such discretion was explained in another context by Circuit Judge Jones of the United States Fifth Circuit Court of Appeals:

The discretionary power of the attorney for the United States in determining whether a prosecution shall be commenced or maintained may well depend upon matters of policy wholly apart from any question of probable cause. Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions. [69]

A majority of courts addressing this issue have confirmed this latter position in concluding that judicial review of the prosecution's discretion in deciding when and whether to institute criminal proceedings in a juvenile case is generally inappropriate. [70]

Indeed, as recently as 1982, the Colorado Supreme Court rejected a juvenile's claim that he was denied equal protection of the law because the prosecutor chose to file a criminal action against him whereas another individual in the juvenile's same circumstances could be treated as a juvenile and charged with delinquency. [71] In acknowledging that there was no contention that the district attorney abused its discretion in considering suspect factors or arbitrary classifications in deciding that the defendant should be tried as an adult, the court noted that the criteria considered in transferring an individual from the juvenile court, together with the purpose of the juvenile code, and the standards governing the duties of the prosecutor's office were available as an aid in helping the prosecutor decide whether to proceed against the juvenile as an adult. [72]

Likewise, when confronted with a similar prosecutorial discretion issue, the Florida Supreme Court reiterated:

[T]he legislature has, by these statutory exceptions to the juvenile division's gen-

---

**67.** *State v. Garcia,* 29 Utah 2d 52, 53, 504 P.2d 1015, 1015–16 (1972) (footnote omitted).

**68.** *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. at 668 (footnote omitted) (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)).

**69.** *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.) (footnotes omitted), *cert. denied,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); *see Russell,* 543 F.2d at 1214, 1216.

**70.** *See, e.g., Newman v. United States,* 382 F.2d 479, 480 (D.C.Cir.1967), *quoted in Russell,* 543 F.2d at 1216; *Thorpe,* 641 P.2d at 939–40; *Jones,* 654 P.2d at 1082 (citing *Bland,* 472 F.2d 1329).

**71.** *Thorpe,* 641 P.2d at 938–40.

**72.** *Id.* at 940 n. 5.

eral jurisdiction over children, returned to the state attorney his traditional prerogative of deciding who [sic] to criminally charge with what offense....

....

... [T]he discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice.... But, defendants counter, the traditional role of the prosecutor is to determine the crime to be charged, not the status in which a person is treated. This last point overlooks the statutory provision [previously] upheld.... The state attorney in seeking an indictment is, if successful, necessarily determining the status in which a juvenile will be treated as well as the offense with which he will be charged.[73]

In explaining the purpose behind this historical principle, the Nebraska Supreme Court stated:

The discretion so vested in the prosecuting attorney [to decide whether a juvenile will be prosecuted as an adult] is akin to that permitting him to determine whether or not to prosecute, what charge should be made, and whether or not to dismiss, apply for immunity, or accept a plea to a lesser offense. All these matters represent necessary and essential decisions of an administrative character which of necessity are determined under varying factual circumstances. To fix reasonable legislative standards of the determination of such matters would be difficult and probably impossible due to the multiplicity of factual situations en-

countered.... "... We do not find it constitutionally objectionable that the legislature has seen fit to grant discretion to the State's Attorney in removal matters under the Juvenile Court Act, particularly in view of the fact that the purpose of the Act * * * can be presumed to be considered by State's Attorneys in making determinations in these matters." [74]

The rationale of these cases is persuasive. This jurisdiction has long recognized the vital role of the prosecution and the importance of affording that body the discretion, within permissible limits,[75] to exercise its function. Certainly, we are compelled, as are our sister states, to recognize this discretion as it preserves the constitutional concept of separation of powers.[76] Also, it must be recognized that the prosecutor has at his or her disposal in making such a decision the criteria provided for elsewhere in the statute,[77] the purpose of the Juvenile Courts Act,[78] and the standards governing the duties of his or her office.[79]

Further, our decision is supported by the crucial fact that under the statute in question, the juvenile court has the right and retains the power in the final regard to "recall control" over the child and bring him or her back into the juvenile system. The fact that the court decided in its discretion that recall was inappropriate in this case does not negatively affect this safeguard in the juvenile system or the constitutionality of the legislation.

Accordingly, in the absence of any arbitrary classifications such as race or

73. *Cain,* 381 So.2d at 1364, 1367–68 (footnote omitted).

74. *Grayer,* 191 Neb. at 526, 215 N.W.2d at 861 (quoting *Handley,* 51 Ill.2d at 233, 282 N.E.2d at 135); *see Cain,* 381 So.2d at 1363–68, and cases cited therein; *People v. Montgomery,* 19 Ill. App.3d 206, 214, 311 N.E.2d 361, 367 (1974); *Jones,* 654 P.2d at 1082–83, and cases cited in n. 1 (following a majority of courts holding that "reverse certification statutes are not violative of either the separation of powers or due process").

75. *See supra* notes 66–67 and accompanying text.

76. Utah Const. art. V, § 1; *see supra* note 69 and accompanying text.

77. *See supra* note 72 and accompanying text; *Handley,* 51 Ill.2d at 233, 282 N.E.2d at 134–35.

78. *Supra* note 55 and accompanying text.

79. The fact that the prosecution is not specifically required by statute to follow and make findings based upon enumerated criteria does not justify the conclusion that the prosecutorial discretion amounts to a constitutional violation. *See generally Thorpe,* 641 P.2d at 940 n. 5; *Montgomery,* 19 Ill.App.3d at 214, 311 N.E.2d at 367; *supra* notes 60 & 64 and accompanying text.

religion, we uphold the statutory scheme vesting the discretion to charge juveniles as adults solely with the prosecution and conclude that the exercise of this discretion resulting in some selectivity in prosecution is not in itself a constitutional violation.[80] The legislation which gives effect to the statute's stated purpose is rational and reasonable, and any resulting discrepancies in treatment do not amount to a denial of equal protection under either the federal or state constitution.[81]

### III

Defendant also contends that the recall provision of the juvenile statute is inadequate and denied him due process of law. However, because of the posture of this case, we do not address the merits of defendant's claims.[82]

■ It is a fundamental principle of constitutional law that a reviewing court will refrain " 'from passing on the constitutionality of a statute until a case involving it has reached a stage where the decision of a precise constitutional issue is a necessity.' "[83] Additionally, we may affirm a trial court's decision based on any appropriate grounds.[84]

In *State in re Atcheson*,[85] this Court held that a certification order of the juvenile court is a final appealable order. In concluding such, we considered and found supportive the language of the juvenile certification statute itself indicating that jurisdiction is terminated by the statutory provisions at such time as a criminal complaint is filed and the fact that the various legislative and judicial protections provided for juveniles are effectively foreclosed by a certification order.[86] This precedent is controlling as it involves the final appealable nature of an order based upon a petition or hearing for recall.

As noted above, pursuant to Utah Code Ann. § 78–3a–25(6) (1987), a juvenile committing certain offenses is subject to the jurisdiction of the juvenile court under section 78–3a–16 unless an indictment is returned or a criminal information is filed against the individual. In such event, the juvenile court is generally divested of exclusive jurisdiction and the juvenile is subject to the jurisdiction of the district court.[87] However, under section 78–3a–25(9), the juvenile court regains exclusive

---

**80.** *See Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668; *Bland*, 472 F.2d at 1336, and cases cited therein; *Thorpe*, 641 P.2d at 939–40, and cases cited therein.

**81.** *Mason*, 99 Misc.2d at 587, 416 N.Y.S.2d at 985.

**82.** At trial, the court responded to similar issues by stating:

> The recall hearing is entirely different in nature and need not be tied to the same factors used in a certification hearing....
>
> Bell has not indicated how the recall hearing held was less than a meaningful opportunity to be heard except by a bare statement that due process requires that a defendant be allowed to introduce all evidence in his favor. Counsel for the state asserts that counsel for Bell had the opportunity to cross-examine all witnesses, review all evidence and present argument at the hearing. This assertion is uncontroverted by Bell.
>
> ....
>
> A juvenile judge does not have absolute discretion in determining whether to recall jurisdiction. U.C.A. 78–3a–25(9) requires the judge to consider three factors: the juvenile's age, legal record, and seriousness of the charge. Given the serious nature of the

> crimes to which this statute applies, it could easily be found that the consideration of these factors is sufficient. As noted above, the substance of the recall hearing actually afforded Bell is not before us. If it is felt that the recall hearing was substantively deficient in allowing the juvenile to remain in an adult court's jurisdiction, the nature of Bell's hearing must be examined.

**83.** *Gray v. Department of Employment Sec.*, 681 P.2d 807 (Utah 1984) (Durham, J., concurring and dissenting) (quoting *Sanks v. Georgia*, 401 U.S. 144, 151, 91 S.Ct. 593, 597, 27 L.Ed.2d 741 (1971) (itself quoting *United States v. Petrillo*, 332 U.S. 1, 5, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947))); *supra* notes 24–27 and accompanying text.

**84.** *State v. Gray*, 717 P.2d 1313, 1316 (Utah 1986).

**85.** 575 P.2d 181.

**86.** *Id.* at 182–83.

**87.** *See id.* at 183; *see also State v. Schreuder*, 712 P.2d 264, 267–68 (Utah 1985) (jurisdiction of district court to conduct preliminary hearing).

jurisdiction when (1) the court determines there is insufficient probable cause for the juvenile to stand trial on the allegation; (2) there is an acquittal or finding of not guilty or dismissal of the charges against the juvenile; or (3) the juvenile court files a request for a return of jurisdiction in the court where the allegations are pending.

Regarding this latter method, the statute specifically allows motions to be filed and a recall hearing to be held and requires the juvenile court to consider the juvenile's age, his or her legal record, and the seriousness of the charge.[88] At such time as the juvenile court enters an order denying a petition to recall exclusive jurisdiction, its exercise of jurisdiction over the juvenile is terminated by the statutory provisions and exclusive jurisdiction over the juvenile remains in the district court. Thereafter, the various legislative and judicial protections provided for the juvenile are effectively foreclosed,[89] just as they are in situations involving certification orders.

Accordingly, the juvenile court's decision based upon a petition for recall of exclusive jurisdiction is a final appealable order. Therefore, because no appeal was taken from this final order and since the substance of the juvenile recall hearing and the record of the same are not before us on appeal, we do not reach the merits of defendant's present contentions.

Furthermore, we decline defendant's invitation to consider his claims on appeal as unsuccessful challenges to the district court's jurisdiction based upon the constitutionality of the subject statutory provisions. In order to find that the issues are properly before us from the district court's determination in this case, we must conclude that the district court could have properly exercised appellate review over the orders of the juvenile court and effectively forced the same to accept and exercise jurisdiction over defendant were the district court to find that the statutory provisions at issue were unconstitutional. Such conclusion is inappropriate under both statute and constitution and does not recognize or uphold the authority of the juvenile court in such instances.[90]

■ Finally, even if we were to conclude that the recall proceedings were constitutionally flawed, a *nunc pro tunc* recall hearing satisfying defendant's due process claims[91] would be inappropriate in this case just as it was in *State in re Schreuder*,[92] wherein we held that even assuming constitutional violations, a *nunc pro. tunc* certification hearing is required "only if the juvenile court, in a flawless hearing, might have retained jurisdiction."[93] Inasmuch as the overwhelming weight of the evidence in this case supports the finding " 'to a moral and legal certainty' that no juvenile court could properly have retained jurisdiction,"[94] defendant's claims lack merit.

88. *See generally supra* note 60 and accompanying text (discussion of criteria used in reverse certification decision).

89. While the statute in question allows a magistrate the opportunity (subject to approval) to commit a juvenile convicted as an adult to the care, custody, and jurisdiction of the Division of Youth Corrections, Utah Code Ann. § 78–3a–25(8) (1987), such is also the case in situations involving certification orders, and our holding concerning a final appealable order, as controlled by *Atcheson*, 575 P.2d 181, is therefore appropriate.

90. *See generally* Utah Code Ann. §§ 78–3a–3, –18, –25, –51 (1987); §§ –16, –39 (1987) (amended 1988 & 1989); § –40 (1987) (amended 1989); Utah Const. art. VIII, § 5 (Supp.1989).

91. *See generally State in re L.G.W.*, 638 P.2d 527, 528 (Utah 1981) (essentials of due process); *Rupp v. Grantsville City*, 610 P.2d 338, 341 (Utah

1980) (" '[D]ue process' is not a technical concept with a fixed content unrelated to time, place and circumstances which can be imprisoned within the treacherous limits of any formula. Rather the demands of due process rest on the concept of basic fairness of procedure and demand a procedure appropriate to the case and just to the parties involved" (footnotes omitted).), *cited in Nelson v. Jacobsen*, 669 P.2d 1207, 1213 (Utah 1983), *itself limited on other grounds by Hackford v. Utah Power & Light Co.*, 740 P.2d 1281, 1286–87 n. 3 (Utah 1987); *supra* note 23.

92. 649 P.2d 19 (Utah 1982).

93. *Id.* at 25 (citations omitted).

94. *Id.* (quoting *Brown v. Cox*, 481 F.2d 622 (4th Cir.1973), *cert. denied*, 414 U.S. 1136, 94 S.Ct. 881, 38 L.Ed.2d 761 (1974)); *see also Clatterbuck*, 700 P.2d at 1082–83 (record contains ample evidence supporting adequacy of court's certification decision).

## IV

Defendant finally contends that "section 78-3a-25(8) impermissibly conditions a sentencing alternative of the court on the approval of the Division of Youth Corrections and therefore violates the doctrine of the separation of powers."

In *State v. Bishop*,[95] we reiterated:

"That the Legislature of this state has the sole power to fix the punishment to be inflicted for a particular crime, with the limitation only that it be not cruel or excessive, will not be questioned. That it may fix any punishment, subject to the above limitation, and leave no discretion whatever in the courts as to the extent or degree of punishment is a well-recognized and universally accepted doctrine, and under a statute fixing a definite period the court has no more discretion as to the punishment than the police officer whose duty it is to carry the punishment into effect...."[96]

Although stated in a different context, this rationale duly recognizes the power that lies in the legislature to determine the appropriate sentencing alternatives that will be available to the courts upon convicting a juvenile.

■ In the instant case, the legislature has delegated to the Division of Youth Corrections, after the latter considers the interest of the juveniles and the public, the power to determine the appropriate placement of juveniles in instances where the trial court, in the exercise of its discretion, decides to commit the juvenile to the care, custody, and jurisdiction of that division. Inasmuch as there is no right to be treated as a juvenile,[97] the legislature could properly delegate to the executive branch the discretion to choose the proper placement of juveniles on an individual basis in particular circumstances where the court considers it appropriate.

**95.** 717 P.2d 261.

**96.** *Id.* at 264 (quoting *Mutart v. Pratt*, 51 Utah 246, 250, 170 P. 67, 68 (1917)).

**97.** *See supra* notes 43–46 and accompanying text.

■ Furthermore, we note that defendant was not referred to youth corrections after sentencing. Instead, the district court chose to sentence him as an adult. Defendant's sentence and subsequent placement were therefore not contingent upon the approval of the Division of Youth Corrections. Accordingly, we conclude that defendant's claim is without merit.

We have reviewed defendant's other contentions and find them also to be without merit. The judgment of the trial court is affirmed.

HOWE, Associate C.J., concurs.

STEWART, Justice (concurring and concurring in the result):

I concur in Part I of the majority opinion, and I concur in the result in Parts II, III, and IV.

DURHAM, Justice (concurring and dissenting):

I concur with part I of the majority decision, but dissent from part II because I am persuaded that the statutory scheme under examination results in a violation of the concept of equal protection guaranteed by the uniform operation of the laws provision of the Utah Constitution.[1]

"Whether a statute meets equal protection standards depends in the first instance upon the objectives of the statute and whether the classifications established provide a reasonable basis for promoting those objectives." *Malan v. Lewis*, 693 P.2d 661, 670 (Utah 1984).

Article I, section 24 protects against two types of discrimination. First, a law must apply equally to all persons within a class. Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute.

**1.** My position on the equal protection question makes it unnecessary for me to reach the issues treated in parts III and IV of the majority opinion. Therefore, I express no views on those questions.

*Id.* (citations omitted). We recently described the analytic process in *Blue Cross & Blue Shield v. State of Utah*, 779 P.2d 634 (Utah 1989):

Article I, section 24 of the Utah Constitution commands that "[a]ll laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. The concept underlying this provision is "the settled concern of the law that the legislature be restrained from the fundamentally unfair practice" of classifying persons in such a manner that those who are similarly situated with respect to the purpose of a law are treated differently by that law, to the detriment of some of those so classified. In scrutinizing a legislative measure under article I, § 24, we must determine whether the classification is reasonable, whether the objectives of the legislative action are legitimate, and whether there is a reasonable relationship between the classification and the legislative purposes.

*Id.* at 637 (citations omitted).

The class created by the statute in question is not limited to juveniles against whom the prosecutor has filed an information. Rather, all juveniles over sixteen named in petitions alleging certain crimes (criminal homicide, aggravated robbery, forcible sodomy, aggravated arson, aggravated sexual abuse of a child, aggravated sexual assault, aggravated burglary, or aggravated kidnapping) constitute the initial class. The class is then subdivided by the statute into those over whom jurisdiction is retained by the juvenile court and those against whom "an indictment on the charge is returned by the grand jury or a criminal information is filed by the county attorney." As to the second subclass, the juvenile court is automatically "divested of jurisdiction." Utah Code Ann. § 78–3a–25(6) (1987).

Those juveniles against whom indictments or informations are filed are indistinguishable under the statute from those who remain in the jurisdiction of the juvenile court, with all of the attendant benefits the latter disposition implies. While it is true, as the majority observes, that there is no right to treatment as a juvenile, that does not permit arbitrary and irrational statutory divisions *between* identically situated juveniles.

The differences in treatment under the statutory system at issue here are significant. In Utah, one of three things can happen to a person between the ages of sixteen and eighteen alleged to have committed any of the offenses enumerated in section 78–3a–25(6). First, the person may be left in the juvenile system. If this occurs, the prosecutor may not proceed in the adult system against such a juvenile and the juvenile will therefore be subject only to the relatively lenient procedures of the juvenile court. *See* Utah Code Ann. §§ 78–3a–22, –23, –24, –29, –30, –33, –35 (1987). Proceedings in juvenile cases are regarded as civil proceedings, with the juvenile court able to exercise equitable powers. Utah Code Ann. § 78–3a–44(1) (1987). Furthermore, a juvenile kept in the juvenile court system who is adjudged in need of incarceration is committed to the Division of Youth Correction, not to the state prison system. Any juvenile offender who has been committed to a secure facility under the direction of the Division of Youth Corrections must be released from that facility when he attains the age of twenty-one or sooner if he is paroled or discharged. Utah Code Ann. § 62A–7–108(1) (Supp.1988). *See generally* Utah Code Ann. tit. 62A, ch. 7.

Second, the person may be charged by petition in the juvenile court under section 78–3a–25(1). In that case, the prosecutor may seek a certification hearing. At the certification hearing, the juvenile court is required to consider all of the factors enumerated in section 78–3a–25(2). Any of the factors enumerated in that subsection could be grounds for the juvenile court to retain jurisdiction over the juvenile and keep that juvenile in the juvenile system. Furthermore, at the certification hearing, all of the rights guaranteed by section 78–3a–25(5) would inure to the juvenile.

Finally, the juvenile may be charged by information or grand jury indictment directly in the adult system at the sole discre-

tion of the prosecutor in the case. In that situation, the juvenile court is divested of jurisdiction and the only involvement of the juvenile court comes if the juvenile requests that a recall hearing be held.

The purposes of the Juvenile Courts Act, namely to serve the welfare of the child and the best interest of the state, particularly the protection of the public against juvenile crime and violence are legitimate state objectives. Utah Code Ann. § 78-3a-1 (1987). The majority correctly observes that the legislature was justified in believing that permitting certain juvenile offenders to be prosecuted as adults was necessary and reasonable. The problem arises in the arbitrary distinction made between some violent juvenile offenders charged with specific offenses against whom a grand jury indictment is successfully sought or an information filed and other violent offenders charged with those same offenses who are left in the juvenile system and still others charged with the same offenses for whom a waiver of jurisdiction is sought pursuant to section 78-3a-25(2). I do not see how these distinctions further the legitimate state objectives of the Juvenile Courts Act. Nothing in the statute suggests *any* basis, legitimate or otherwise, for the differences in treatment between juvenile offenders assigned to any of the different possible statutory paths.

For the juvenile, the consequences of the statutory path to which he or she is consigned are enormous. Those consequences include the allocation of the burden of proof, the statutory standards to be ap-plied, and even the availability of a hearing on the disposition-track issue. Furthermore, the sentencing options after conviction and the location and length of any incarceration are very different in the adult and the juvenile systems.

This is not a traditional "prosecutorial discretion" case; it is an unusual case in which the statutory scheme itself takes one class of persons in identical circumstances and subdivides it into subclasses indistinguishable from one another. There is no basis for the subdivision except the prosecutor's arbitrary and standardless choice between *filing options* for the same criminal charges. This is not a classic "charging" option where the prosecutor decides which criminal statute best suits the circumstances of the crime and the offender. Nor is it a plea-bargaining option or a sentencing or diversion procedure, all of which entail court supervision. It is an option which creates two parallel but unequal disposition tracks for the same statutory class of offenders but permits assignments to one or the other of the tracks without a rational basis. Although it is the prosecutor's choice of where to file that *triggers* the arbitrary operation of the statute, the capriciousness is in the statute itself. The juveniles who end up in district court are *statutorily* indistinguishable from those who remain in juvenile court.

While a number of cases from other jurisdictions have upheld similar statutes against constitutional claims (maj. op. at note 22), each one of those cases is in some way distinguishable from the current case.[2]

---

**2.** *People in re D.G.*, 733 P.2d 1199 (Colo.1987), dealt with a challenge to the sentencing provision of the Colorado Children's Code. The court determined that regardless of which of two courses the prosecution chose, the result would be the same. 733 P.2d at 1201. Furthermore, the court determined that under the sentencing provision in question, the juvenile court judge retained a great amount of sentencing discretion. 733 P.2d at 1203-04. In *People v. Thorpe*, 641 P.2d 935 (Colo.1982), the court upheld the constitutionality of a statute which *required* prosecution as an adult of a juvenile committing certain enumerated crimes. 641 P.2d at 937-38. In *State v. Cain*, 381 So.2d 1361 (Fla.1980), the court noted that the statute being challenged was part of a "logical progression of the statutory transfer scheme [which] demon-strates that, far from being arbitrary, the transfer scheme is entirely reasonable." 381 So.2d at 1364. Furthermore, the statute in question did provide some guidelines for the prosecutor before an information could be filed in adult court against a juvenile. 381 So.2d at 1364-65. *People v. Handley*, 51 Ill.2d 229, 282 N.E.2d 131, *cert. denied*, 409 U.S. 914, 93 S.Ct. 247, 34 L.Ed.2d 175 (1972), upheld the constitutionality of a statute which required the filing of removal petitions by the prosecutor with the juvenile court judge and a hearing at which the juvenile court judge had the opportunity to object to the removal of the case from the jurisdiction of the juvenile court. 51 Ill.2d at 233, 282 N.E.2d at 135. Furthermore, offenders were not sentenced to incarceration in adult facilities, but

None of the cases clearly appears to involve the unequal, multiple-choice statutory process we have here, which seems to be unique to Utah. Rather they involve statutes which treat *all similarly situated* juveniles alike. The prosecutorial discretion discussed in the majority of these cases is discretion to charge or not to charge a specific offense that will uniformly trigger the differential statutory treatment. All juveniles charged with the same offense are treated alike by these statutes.

The distinctions between the type of case referred to above and the instant case are critical. *Jones v. State*, 654 P.2d 1080 (Okla.Crim.App.), for example, is a typical prosecutorial discretion case. That opinion discusses prosecutorial discretion at length and with approval. But the *Jones* court was dealing with discretion to choose what offense to charge, a choice traditionally permitted the prosecution. The statute at issue in *Jones* provided that a sixteen- or seventeen–year–old who was charged with an enumerated felony *"shall be considered as an adult,"* so that, once charged, all juveniles were treated alike. 10 Okla.Stat. tit. 10, § 1104.2 (1981). Under the Utah statute, by way of contrast, identically charged juveniles may be treated entirely differently and unequally.

In *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the United States Supreme Court held that the determination of whether to transfer a child from the juvenile court to the criminal process of the adult court is a "critically important" proceeding, that it must satisfy basic requirements of due process and fairness, and that it is incumbent on the juvenile court, after a hearing, to accompany a waiver of jurisdiction with a statement of the reasons for the waiver. 383 U.S. at 560–61, 86 S.Ct. at 1056–57. Under the Utah law in question here, that "critically important" decision concerning which court has jurisdiction over a juvenile offender is accompanied by numerous constitutional safeguards for some juveniles and not for others, even though all are identically situated vis-a-vis the statute. For example, the decision of a juvenile court judge in Utah to certify a juvenile as an adult is governed by numerous guidelines and is subject to appellate review as a final order.[3] How-

---

rather were committed to the Illinois Youth Commission for incarceration. 51 Ill.2d at 230, 282 N.E.2d at 133. In *State v. Grayer*, 191 Neb. 523, 215 N.W.2d 859 (1974), the court upheld the constitutionality of a statute which authorized each county attorney to file charges in either juvenile or criminal courts at his discretion without any guidelines. While this case at first seems indistinguishable from the current case, in that opinion the Nebraska Supreme Court stated that part of the basis for decision was the fact that in Nebraska, juvenile and adult courts had equal and concurrent jurisdiction. In other words, the juvenile courts are not courts of exclusive jurisdiction. 191 Neb. at 526, 215 N.W.2d at 861. Compare this with Utah Code Ann. § 78–3a–16(1) which, in all but a few cases, creates exclusive jurisdiction over juvenile offenders. Furthermore, *Grayer* has been legislatively altered because the county attorney in Nebraska is now required to consider nine different factors which serve as guidelines in determining which juveniles should be prosecuted in the juvenile court and which should be prosecuted in the adult system. Neb. Rev.Stat. § 43–276 (1988). In *People v. Mason*, 99 Misc.2d 583, 416 N.Y.S.2d 981 (Sup.Ct.1979), the court upheld the constitutionality of legislation which made thirteen-, fourteen-, and fifteen-year-olds criminally responsible for certain enumerated felonies. 416 N.Y.S.2d at 983.

However, the same legislation provided that such juvenile offenders were to be confined in separate facilities. 416 N.Y.S.2d at 985. *Jones v. State*, 654 P.2d 1080 (Okla.Crim.App.1982), upheld the constitutionality of a statute which provided that someone sixteen- or seventeen-years-old charged with an enumerated felony *"shall* be considered as an adult." 654 P.2d at 1082 (emphasis added). *Jahnke v. State*, 692 P.2d 911 (Wyo.1984), upheld the constitutionality of the statute which placed concurrent jurisdiction in juvenile and district courts for purposes of criminal prosecutions of minors charged with felonies. 692 P.2d at 928. However, in *Jahnke*, the juvenile received a full evidentiary hearing on her motion to transfer her case to the juvenile court and the district court applied the criteria suggested by *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), in reaching a decision that the juvenile should be prosecuted as an adult. 692 P.2d at 929.

3. *See State in re Clatterbuck*, 700 P.2d 1076 (Utah 1985), where we held that orders under section 78–3a–25 "must contain a sufficiently detailed statement of facts to permit us to determine that a full investigation has been made and that each of the statutory factors has been considered." *Id.* at 1081.

ever, under the statute in question here the same decision may be cursorily made, without standards and without benefit of the record, by a prosecutor. As Judge Skelly Wright observed in his dissent in *United States v. Bland,* 472 F.2d 1329 (D.C.Cir. 1972), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973),

> The decision by a juvenile [court] judge or by the United States Attorney to treat the child as an adult for prosecution purposes marks the beginning of precisely the same process of adjudication. And it cannot be doubted that the United States attorney is certainly a less disinterested decision maker than the [j]uvenile [c]ourt judge. It would seem then that, in order to compensate for lack of neutrality, ... procedural niceties should be *more* rather than less carefully observed when the prosecutor is the decision maker.
>
> ....
>
> It is, of course, still widely believed that prosecutors have a broad, unreviewable discretion to determine which offenders to charge and what crimes to charge them with, although even this notion is now widely challenged by the leading scholars.... But it should be readily apparent that the usual notions of prosecutorial discretion have nothing to do with this case. The defendant does not ask us to review the substance of the prosecutor's charging decision or to place limits on the scope of his discretion.

472 F.2d at 1344, 1347 (Wright, J., dissenting) (emphasis in original; citations omitted).

It is noteworthy that the statute in *Bland,* like those in *Jones* and almost all of the cases cited by the majority, provided for automatic exemption from the jurisdiction of the juvenile system for *all* juveniles over a certain age and charged with certain enumerated crimes. It seems likely to me that Judge Wright's dissent would have prevailed had the *Bland* court been dealing with a statute like ours.

While the State could choose to prosecute as adults *all* juveniles named in petitions pursuant to section 78–3a–25(6), the problem here is that the legislature has not chosen to do so. Instead it has permitted such prosecution of some but not others identically situated, and it has provided no rational basis (in fact, no basis at all) for telling which are which.

The direct filing/recall portion of Utah's statute does not apply equally to all persons within a class (i.e., persons between sixteen and eighteen who are alleged to have committed certain specified violent crimes). Furthermore, the statutory distinctions between persons assigned to different disposition tracks are not based on "differences that have a reasonable tendency to further the objectives of the statute." *Malan v. Lewis,* at 670. As currently written, section 78–3a–25 permits disparate treatment of similarly situated juveniles and constitutes a violation of article I, section 24 of the Utah Constitution.

ZIMMERMAN, J., concurs in the concurring and dissenting opinion of DURHAM, J.